[Civ. No. 708. Fifth Dist. July 19, 1967.]

MARY SPENCER, Plaintiff, v. HORACE C. SPENCER, Defendant and Appellant; EDWARD T. TAYLOR et al., Claimants and Respondents.

Cardozo, Trimbur & Nickerson and John M. Trimbur for Defendant and Appellant.

Edward T. Taylor and Edward T. Taylor, Jr., in pro. per., for Claimants and Respondents.

GARGANO, J.—This is an appeal from an order of the Superior Court of Tuolumne County denying appellant's request for an order directing respondents to release a bank account. Since the circumstances of this appeal are somewhat unusual, we will set forth the facts in detail.

In 1961 Mary Spencer, who had engaged the respondents as her attorneys, instituted an action in the Superior Court of Tuolumne County for a divorce against her husband, Horace C. Spencer, the appellant herein. On April 8, 1964, approximately three years later, an account was opened with the Modesto Savings & Loan Association in the joint names of the respondents (then attorneys for Mrs. Spencer) and appellant's attorney, Mr. John M. Trimbur, and approximately $22,000 was deposited therein. This money, which apparently represented the balance due on a promissory note in favor of Mr. Spencer, was obviously deposited in the account by respondents and Mr. Trimbur as trustees for the benefit of their clients. In fact, on November 5, 1965, respondents notified the Modesto Savings & Loan Association that the money in the account was being held in escrow for the Spencers, and that it was an escrow account. The passbook, however, remained in their possession and no withdrawals can be made from the account except upon the signatures of respondents and Mr. Trimbur. Respondents continued to represent Mrs. Spencer in the di-

vorce action until November 1965, when they were discharged. At that time Mrs. Spencer engaged the law firm of Kroloff, Brown, Belcher and Smart to represent her, and a formal substitution of attorneys was requested of and approved by the court. Thereafter, appellant and Mary Spencer agreed to a property settlement which provided, *inter alia,* that the account in the Modesto Savings & Loan Association was to belong to the appellant as his separate property. Accordingly, appellant requested respondents to relinquish the passbook, but respondents, who had not been paid for services they had rendered to Mrs. Spencer, refused to do so, asserting that they had a common law retaining lien on the account for those services. On February 8, 1965, the superior court issued an order to show cause at appellant's request, directing respondents to appear and show cause why they should not be ordered to transfer the account directly to appellant. The hearing on the order to show cause was held February 11, 1965, and at the conclusion thereof respondents voluntarily relinquished all funds in the account with the exception of $7,500. It was agreed that the court could reserve its ruling on this latter amount until all issues relating to respondents' claim of lien had been briefed. On March 23, 1965, the court denied appellant's request for an order directing respondents to deliver the remaining $7,500 to appellant. The pertinent part of the court's decision reads: ''The court concludes, therefore, irrespective of the question of jurisdiction over Taylor & Taylor, that even if it be assumed that such jurisdiction exists, Taylor and Taylor are correct in asserting their *right* of lien (although the *quantum meruit* extent of their lien will have to be determined in a separate proceeding.)

''Also, it is true that the assignor (plaintiff) could assign no greater interest than she had and her one-half interest in the whole fund was subject to Taylor & Taylor's lien. In addition, in this instance, the assignee (defendant) took with actual notice of the claim of lien.

''It is therefore the decision of the Court that defendant's motion and request for an order directing Edward T. Taylor and/or Edward T. Taylor, Jr., to deliver over the remaining $7500.00 to defendant, or in the alternative to order said Modesto Savings & Loan Association to do so, be and the same hereby is denied.'' On April 12, 1966, appellant renewed his motion for an order directing respondents to deliver the funds remaining on deposit in the Modesto Savings & Loan Association account to appellant, and on this occasion appellant also

alleged that respondents had waived whatever lien they may have had because, during the time intervening between the court's decision on the first order to show cause and the issuance of the second order to show cause, respondents had instituted a separate action against Mary Spencer to recover the reasonable value of their services, and in said action had filed a declaration and undertaking for attachment which, among other things, stated: "Said contract is in this State, and the payment of the same (1) is not secured by any mortgage, deed of trust or lien upon real or personal property. . . ." On May 3, 1966, the court denied appellant's motion and appellant appealed.

In view of the jurisdictional problems involved, we must first determine whether the court had the power in the divorce action to order respondents to appear and show cause in relation to a collateral issue, and if so whether its decision in this respect is appealable. In other words, although respondents represented Mrs. Spencer as her attorneys when the divorce action was instituted, they were not her attorneys when the order to show cause was issued, nor were they, by virtue of their attorney status, ever parties to the lawsuit itself. (*Norton* v. *Walsh,* 94 Cal. 564 [29 P. 1109].) Consequently, the power of the court to make them parties to the divorce action by the issuance of an order to show cause, and the appealability of the orders which it made in connection therewith, raise important jurisdictional questions which must first be resolved (although they were studiously avoided in this appeal by the parties themselves) before the appellant's appeal may be decided on the merits.

It is fundamental that a divorce action not only severs the marital relationship between the immediate parties, but also divides the community property and settles such issues as support for one of the spouses. Hence, it is settled, in this state at least, that an orderly and satisfactory termination of the action requires a complete determination of the property rights of the parties, and if necessary to attain this salutary objective (since the law abhors multiplicity of suits), third parties who claim an interest in the property alleged to be community may be brought in and their rights adjudicated (*Elms* v. *Elms,* 4 Cal.2d 681 [52 P.2d 223, 102 A.L.R. 811]; *Melny* v. *Melny,* 90 Cal.App.2d 672 [203 P.2d 588]; *Callnon* v. *Callnon,* 7 Cal.App.2d 676 [46 P.2d 988]). In *Elms* v. *Elms, supra,* the court at pages 683-684 of the opinion stated the salient reasons behind the rule: "There are sound reasons

in policy why the court in an action for divorce should be permitted to adjudicate the rights of third parties in property alleged by one or both of the spouses to be community property. One of the duties of the court sitting as a court of equity in a divorce proceeding is to make an equitable distribution or award of community property, and to provide for the support of the wife. The court can scarcely make a fair distribution or allotment of parcels of community property without determining what property is community. If property alleged by one of the spouses to be community is in fact in whole or in part claimed by third persons, the court should determine as between the spouses whether property is community, or owned by third persons. If a third party claimant cannot be made a party and his rights adjudicated, it may be held in a separate action brought by or against such claimant that he is the owner of the property, with the result that a division of all community property made between the spouses in the divorce action, based on a determination that certain property was owned by them, will be rendered inequitable as between them." And in *Callnon* v. *Callnon, supra,* 7 Cal.App.2d 676, 680, the court said: "In an action for divorce either party may join a third party who claims an interest in the community property and the decree declaring the property rights is equally binding on the parties to the divorce and on the party so joined."

█ By asserting a lien (possessory, retaining or otherwise), respondents in essence claimed an interest in the property of the parties to a divorce action, and thus we conclude that the court at appellant's request had the power to bring them in, in order to adjudicate this claim. In other words, appellant and Mrs. Spencer had arrived at an agreement settling their respective property rights. Under this agreement appellant was to receive the money in the Modesto Savings & Loan Association account. Consequently, in order to finally dispose of all of the issues of the divorce action, and more particularly to enable it to distribute the property of the parties (community, separate or otherwise) according to their property settlement agreement, it was necessary for the court to bring in respondents to adjudicate their claim. Moreover, respondents acquired control over the property against which they assert their lien during the course of litigation by virtue of their relationship as attorneys for one of the litigants and as joint trustees (with Mr. Trimbur, the attorney for the

other litigant). Consequently, it would be incongrous (and even ludicrous) to hold that a third party whose claim to property involved in a divorce action may be made a party to the action in order to adjudicate his rights therein even though his claim may have arisen independently before the divorce action, but that the court has no jurisdiction to bring in a person who acquired a claim to the property during actual litigation as a trustee. As we have stated, under the facts of this case it was not only proper for the court to do so, but it was also proper for the court to order the respondents to appear by the issuance of an order to show cause. It is settled that under proper circumstances a person may be made a party to the record (and a party to the action for appeal purposes) by an order to show cause (*Anglo-Californian Bank* v. *Superior Court,* 153 Cal. 753 [96 P. 803]; *Pacific States Sav. & L. Co.* v. *Mortimer,* 70 Cal.App.2d 811 [161 P.2d 684]; *Cline* v. *Superior Court,* 35 Cal.App. 150 [169 P. 453]).

We will now direct our attention to the question of whether the court's order denying appellant's motion is appealable under Code of Civil Procedure section 963. This section, with a few exceptions (not pertinent to the facts of this case), provides that appeals may be taken only from a final judgment. The rule embodied in this section has come to be known as the ''final judgment rule'' or the rule of ''one judgment'' which is a fundamental principle of appellate practice in the United States (3 Witkin, Cal. Procedure (1954) Appeal, § 10, p. 2151). Thus, in order to avoid a piecemeal disposition of a case which causes unnecessary delay and expense and a multiplicity of suits (with few specified exceptions), appeals generally may not be taken from interlocutory orders or similar decrees.

The term ''final'' as used in section 963 does not necessarily mean last in time. In other words, there are occasionally some issues in the course of litigation that are distinct and severable from the main issue, and if a decision on such an issue would determine finally the rights of the parties, leaving no further judicial acts to be done by the court in regard to that issue, the decision is for all intents and purposes final. As stated in *Colma Vegetable Assn.* v. *Superior Court,* 75 Cal. App. 91, 94-95 [242 P. 82]: ''The term 'final judgment,' as used in said section, is not limited, however, to final judgment

in the action, or to the last judgment necessarily rendered therein (*Sharon* v. *Sharon*, 67 Cal. 185 [7 P. 456, 8 P. 709]). 'It applies also to a final determination of a collateral matter distinct from the general subject of litigation, affecting only the parties to the particular controversy and finally settling the same' (2 Cal.Jur., p. 144, and authorities therein cited; *Cline* v. *Superior Court*, 35 Cal.App. 150 [169 P. 453]). 'A judgment that is conclusive of any question in a case is final as to that question. The code provides for an appeal from *a* final judgment, not from *the* final judgment in the action' (*Sharon* v. *Sharon, supra*).'' Hence, it is manifest that there may be several final judgments in an action for the purposes of appeal. However, it has also been stated on numerous occasions that for such an order to be final it is not sufficient that it determine finally some distinct issue in the case, but that it must also direct the payment of money by appellant or the performance of an act by or against him. (*Sjoberg* v. *Hastorf*, 33 Cal.2d 116 [199 P.2d 668]; *Fish* v. *Fish*, 216 Cal. 14 [13 P.2d 375]; *Free Gold Mining Co.* v. *Spiers*, 135 Cal. 130 [67 P. 61]; *Grant* v. *Superior Court*, 106 Cal. 324 [39 P. 604].)

Admittedly, this latter requirement has been the subject of some confusion in the appellate court decisions decided after *Mehan* v. *Hopps*, 45 Cal.2d 213 [288 P.2d 267]. In *Meehan* the Supreme Court allowed an appeal from an order denying a motion to enjoin opposing counsel from participating in the case on the main ground that the motion was in effect a motion for injunctive relief under Code of Civil Procedure section 963, subdivision 2. The court, however, stated (*Meehan* v. *Hopps, supra*, at p. 217): ''It requires no argument to demonstrate that the question of disqualification of counsel bears no relation to the main issue in the present case. It has been correctly stated that the general test for determining whether the judgment is final is 'that where no issue is left for future consideration except the facts of compliance or noncompliance with the terms of the first decree, that decree is final, but where anything further in the nature of a judicial action on the part of the court is essential to a final determination of the rights of the parties, the decree is interlocutory.' [Citations.] Because the trial court's order denying Hopps' motion left nothing further of a judicial nature for a final determination of his rights regarding opposing counsel, the order was final for purposes of appeal.'' Accordingly, in *Berry* v. *Chrome Crankshaft Co.*, 159 Cal.App.2d 549 [324 P.2d 70],

and in *Getrost* v. *Lanham,* 200 Cal.App.2d 801 [19 Cal.Rptr. 686], appeals were allowed even though the orders did not direct the payment of money by appellant or the performance of an act by or against him. On the other hand, in *Efron* v. *Kalmanovitz,* 185 Cal.App.2d 149 [8 Cal.Rptr. 107], the court opined that the appeal was allowed in *Mcehan* solely on the basis of injunction, and that the reference to the collateral order doctrine was concerned only with the question of collaterality and finality. Thus, the court held that, notwithstanding the language contained in *Meehan,* to be appealable the order must direct the payment of money by appellant or the performance of an act by or against him.

We believe that most of the confusion arising from these conflicting appellate court decisions is eliminated when the leading and often cited California Supreme Court decision of *Sjoberg* v. *Hastorf, supra,* 33 Cal.2d 116 is carefully analyzed. In *Sjoberg* the parties to the collateral proceedings were the identical parties involved in the main action. Significantly, the court at page 119 stated: ''If appellants have a right to arbitration they may assert it on the appeal from the final judgment in the contract action. Thus no greater hardship will result than in any case where a party is forced to stand trial because of an erroneous ruling of the trial court.''

We believe that where, as here, a stranger to the main action is made a party to the action on an issue collateral to, independent of, and severable from the issues of the main action, a decision which finally determines the respective rights of the parties, leaving no further judicial acts to be done by the court in regard thereto, is appealable even though it may not ''technically'' direct the prformance of an act by or against appellant. In fact, this situation is somewhat analogous to an order striking a cross-complaint which brings in a new party. In other words, although an order striking a cross-complaint is not appealable (*Sjoberg* v. *Hastorf, supra,* 33 Cal.2d 116, and *Stockton etc. Works* v. *Glen's Falls Ins. Co.,* 98 Cal. 557 [33 P. 633]), an order striking a cross-complaint which brings in a new party to the action is appealable (*People* ex rel. *Dept. of Public Works* v. *Clausen,* 248 Cal. App.2d 770 [57 Cal.Rptr. 227]). Moreover, we see little if any distinction between the facts of the instant case and the facts of *McClearen* v. *Superior Court,* 45 Cal.2d 852 [291 P.2d 449], and *Hersch* v. *Boston Ins. Co.,* 175 Cal.App. 2d 751 [346 P.2d 796], both decided after *Sjoberg* v. *Hastorf, supra.*

In *McClearen* the Supreme Court held that a justice court order denying a motion for a lien upon a cause of action and judgment was appealable, even though section 974 of the Code of Civil Procedure providing for appeals from justice courts contains no express mention of an order denying a motion to impress the lien, and, apparently, even though the order did not direct the payment of money by appellant or the performance of an act by or against him. In *Hersch* an appeal was allowed by the appellate court on an order granting a judgment creditor a lien on a judgment debtor's cause of action against a third party on the ground that it was a final determination of a matter collateral to the main issue in the debtor's case, and was an appealable order as between the lienor and the lienee, there being no further action to be taken by the court as to them. Accordingly, we conclude that the order is appealable because the court finally determined respondent's right to assert a retaining lien, and there were no further judicial acts to be performed by the court in the divorce action itself in regard to the lien issue. Although it is true that the court did not attempt to determine the reasonable value of respondents' services, this issue was, by necessity, a subject for separate proceedings between the respondents and Mrs. Spencer to which appellant was not a party.

 We will now consider the merits of the appeal. In denying appellant's motion for an order directing respondents to relinquish the funds in the Modesto Savings & Loan account, the trial court concluded that respondents had acquired a common law retaining lien thereon, and that they were correct in asserting that lien. Thereafter, in denying appellant's second motion for such an order the court concluded that respondents did not waive their lien when they attempted to attach other property belonging to Mrs. Spencer in the separate action which they filed against her to recover for their services. Thus, appellant contends that the trial court erred because he believes an attorney cannot have a common law retaining lien in this state; and even if he could, he contends that the lien was waived by respondents. Respondents, on the other hand, not only assert that common law retaining liens for attorneys exist in this state, but they also urge that no waiver occurred.

The early case of *Ex parte Kyle,* 1 Cal. 331, has been cited on numerous occasions for the proposition that there is no retaining lien in this state. Moreover, in *Echlin* v. *Superior*

*Court,* 13 Cal.2d 368, 373 [90 P.2d 63, 124 A.L.R. 719], the Supreme Court emphatically stated: "But in this state, where an attorney has no lien in the absence of an agreement therefor [citations], it has been held from an early date that the attorney's remedy for a wrongful discharge is by an independent action." And, in *Wagner* v. *Sariotti,* 56 Cal.App.2d 693, 697 [133 P.2d 430], the court said: "In this state an attorney has neither a retaining nor charging lien for compensation on a judgment secured by his services in the absence of a contract containing an agreement for a lien." However, we have been unable to uncover a single decision squarely dealing with a common law possessory or retaining lien, and are inclined to agree with the trial court's subtle suggestion that the law of this state on the subject of attorneys' liens is uncertain and even confusing. For example, in 6 Cal.Jur.2d 410-411, it is stated: "No reported case from this state dealing with the recognition of such a general, possessory, or retaining lien has been found. Conflicting suggestions have been made as to whether such a lien exists under the California law." Also, more recently, in *Isrin* v. *Superior Court,* 63 Cal.2d 153, 157 [45 Cal.Rptr. 320, 403 P.2d 728], the Supreme Court, speaking through Justice Mosk, said: "In this state attorney's liens are provided by legislation in certain limited instances (e.g., Code Civ. Proc., § 763; Lab. Code, § 4903 [citations]), and may be created by express provision of the retainer contract between the attorney and his client [citations]. Beyond this point, however, the law of attorney's liens in California today is much less clear." And in a footnote in *Isrin* we find this interesting observation (*Isrin* v. *Superior Court, supra,* at p. 157) : "It may also be that the entire line of decisions denying the existence of a common-law attorney's lien has been erected on a historically erroneous foundation, as suggested by Professor Radin's trenchant critique of *Ex parte Kyle* in *Contingent Fees in California* (1940) 28 Cal. L.Rev. 587, 594-595. The virtually unanimous position of our sister jurisdictions is contrary to *Kyle.*"

In any event, we do not find it necessary to resolve the perplexing question of whether a common law retaining lien exists in this state. This is so because respondents did not and could not acquire such a lien under the facts of this case even if the lien is deemed to exist. They did not acquire the money on deposit in the Modesto Savings & Loan account only from their client Mrs. Spencer, nor solely in their capacity as her attorneys. To the contrary, the money was received by re-

spondents, together with appellant's attorney, Mr. Timbur, as joint trustees in an obvious effort to place it in an account beyond the control of the litigants until such time as their property rights were amicably settled or litigated. In fact, according to the undisputed testimony of appellant, the money came from a final payment on a note and deed of trust on lands which he owned prior to his marriage; and in a previous divorce proceeding he had approved the execution of the note and deed of trust with Mrs. Spencer as a joint tenant ''in order to save losing the property.'' He further testified that the reason the proceeds paid were deposited in the Modesto Savings & Loan account was that he ''imperatively'' needed his wife's signature and she would not sign, ''so Mr. Trimbur and Mr. Taylor worked out a trustee's account as trustees to hold until our final settlement.''

To hold that an attorney may acquire a retaining lien (even if it exists in this state) on property which he acquired under the facts of this case would be inconsistent with the duty which he voluntarily assumed as a trustee and would be repugnant to the high professional standard which the attorney must maintain during all phases of litigation. In fact, in litigation between marital (and even business) partners, heated disputes often arise as to the ownership or the division of community or partnership property. Hence, such litigants, while relying entirely on the advice and high professional standards of their attorneys, occasionally agree to trust-like arrangements for the safekeeping of the disputed property pending final determination of their rights in order to avoid troublesome and expensive procedures such as restraining orders, temporary injunctions and the appointment of receivers. To permit the attorney of one of the litigants to later assert a lien against the property to the detriment of the litigant whom he did not represent is not only basically unfair, but it would effectively discourage similar arrangements, thereby cluttering the already congested court calendars with additional and unnecessary side-skirmishes which can be avoided. It is consistently held in our sister states which recognize retaining liens that an attorney does not acquire such a lien under circumstances which are inconsistent with its enforcement. It is also consistently held that a general retaining lien does not attach to papers, documents, or other property which come into the hands of the attorney as a trustee or for some special purpose (5 Am.Jur., p. 389; 7 C.J.S., p. 1169).

Having concluded that respondents did not acquire a retaining lien in this case, we do not reach the question as to whether the lien was waived. Accordingly, the order is reversed.

Conley, P. J., and Stone, J., concurred.

A petition for a rehearing was denied August 17, 1967, and respondents' petition for a hearing by the Supreme Court was denied September 13, 1967.