[Civ. No. 32148. First Dist., Div. One. Sept. 19, 1974.]

WINNIE ANN SEVERDIA, Plaintiff and Respondent, v.
JOHN C. ALAIMO, Defendant and Appellant.

## COUNSEL

George De Lew for Defendant and Appellant.

Charles Gordon for Plaintiff and Respondent.

## OPINION

**MOLINARI, P. J.**—This case arises out of a divorce action[1] filed on October 21, 1969, and a dispute between Winnie Ann Severdia and John C. Alaimo, the attorney who represented her in said action. Pursuant to a stipulation of all parties involved in the action a trust fund consisting of the proceeds of the sale of the residence of the spouses was distributed to the parties. A check for one-fourth of the proceeds, amounting to $5,387.47, was made payable to Mrs. Severdia and Mr. Alaimo and the check for the proceeds was delivered to Alaimo. He refused to endorse the check and to turn it over to Mrs. Severdia claiming that he had an interest in the check for attorney's fees allegedly owed him. Mrs. Severdia filed an order to show cause in the action to have Alaimo show cause why he should not turn the check over to her. In the course of the proceedings the subject

---

[1] This action was filed prior to the effective date (Jan. 1, 1970) of the Family Law Act pursuant to the provisions of which actions for the dissolution of a marriage are no longer referred to as divorce actions but as proceedings for the dissolution of marriage commenced by the filing of a "petition" and a determination made pursuant to a "hearing." (See Civ. Code, § 4501 et seq.)

check was cashed and the proceeds, less $3,112 claimed as attorney's fees plus $63.70 costs, was paid to Mrs. Severdia. After a hearing of the order to show cause Alaimo was directed to pay the balance of said proceeds to Mrs. Severdia. Alaimo appeals from said order.

The record discloses that a complaint for divorce was filed on October 21, 1969, by Mrs. Severdia against Anton Michael Severdia. During the pendency of these proceedings the parties, on May 26, 1971, entered into a stipulation that the residence of the parties be sold and that the proceeds of the sale be held in trust pending a determination of their interests in said property and that of Mrs. Severdia's parents, Nikola and Mary Eterovich, who purported to hold a deed of trust on said property as security for a note executed by the Severdias. The Eterovichs joined in the stipulation. This stipulation was approved by order of court.

On August 10, 1971, the proceeding for the dissolution of the marriage came on for hearing and on the same day the Eterovichs (hereinafter "the interveners") were ordered to be joined as third parties in the proceeding for the purpose of determining their rights in said funds. The issues tendered by the complaint in intervention were tried on September 23, 1971, and on that day the court rendered its decision that the note and deed of trust asserted by the interveners were not based on any consideration and ordered that judgment be against the interveners. In its findings of fact and conclusions of law the court determined that the funds held in trust were the community property of the Severdias subject to the disposition of the court in the dissolution of marriage proceeding, ordered that said funds should be divided equally between the parties, and ordered that the trustee deliver said funds to the attorneys for the Severdias. These determinations were incorporated in a purported judgment filed and entered on November 16, 1971.

On November 29, 1971, the interveners filed a motion for new trial, the disposition of which does not appear in the record. An interlocutory judgment of dissolution of the marriage was made on December 29, 1971. This judgment recited, among other things, that the moneys derived from the sale of the residence of the spouses was to be divided equally, and that Mr. Severdia was to pay to Alaimo the sum of $300 "on account, in addition to any fees or amounts heretofore ordered by this court for said attorney's services to petitioner [Mrs. Severdia] herein."

On January 12, 1972, there was filed in the proceeding a stipulation entered into between the Severdias and the interveners, providing that the judgment entered on November 16, 1971, be vacated and set aside and that a new and different decree be entered, and an order entitled "Order for

Disbursement of Funds." This order vacated the purported judgment of November 16, 1971, and ordered, adjudged and decreed that the trustee was to disburse the subject funds as follows: one-half to the interveners; one-fourth to Mrs. Severdia and Alaimo; and one-fourth to the husband and his attorneys.[2]

Two days later, on January 14, 1972, the interlocutory judgment of dissolution of the marriage was filed. This judgment was entered on January 17, 1972. A final judgment of dissolution of the marriage was made and entered on March 22, 1972.

On March 24, 1972, Mrs. Severdia secured the issuance of an order to show cause in the proceeding directed to Alaimo and seeking to have him show cause why he should not be required to endorse and deliver to her the settlement proceeds represented by the check payable to her and Alaimo.

---

[2]The said stipulation was filed on the same day that the "Order for Disbursement of Funds" was signed and filed. The clerk's transcript indicates that the two documents were filed separately. During the pendency of the appeal Alaimo filed a motion in this court to augment and correct the record to include a document marked "Exhibit A" on the ground that the original thereof was attached to and made a part of said stipulation. Exhibit "A" is an exact copy of the "Order for Disbursement of Funds" signed by the trial judge and filed on January 12, 1972, with the exception that it bears the designation "Exhibit A" on the first page and the signature and date lines are in blank. The clerk of the San Mateo County Superior Court executed a declaration, which was filed in support of the motion to augment, to the effect that "Exhibit A" was in fact attached to and a part of the stipulation filed on January 12, 1972. The motion to augment was opposed by Mrs. Severdia and was supported by a new declaration from the clerk stating that the true facts are that Exhibit "A" was in the file but it was attached to the "Order for Disbursement of Funds" rather than the stipulation for such order. A final declaration by the clerk dated May 3, 1973, stated the facts to be as follows: "[P]rior to executing the [first declaration] this exhibit had been attached to the 'Order For Disbursement of Funds' filed on January 12, 1972. Upon representation of one of the attorneys in this case that Exhibit 'A' should have been attached to the mentioned 'Stipulation to Vacate, Set Aside and Revoke Decree and Enter New and Different Decree' and from the language in the stipulation it appearing to me that this attorney's representation was correct, I removed Exhibit 'A' from the 'Order For Disbursement of Funds' and attached it to the 'Stipulation to Vacate, Set Aside and Revoke Decree and Enter New and Different Decree' and then executed the [first declaration] upon request of this attorney. . . . [¶] In view of the conflict developing between the attorneys in this matter, I hereby declare that in order to restore this file to the condition it was in at the time this matter first came to my attention, I have removed Exhibit 'A' from the 'Stipulation to Vacate, Set Aside and Revoke Decree and Enter New and Different Decree' and re-attached it to the 'Order for Disbursement of Funds.'" The motion to augment and correct the record on appeal was granted by the court and the record on appeal was ordered augmented to include a photographic copy of the document marked Exhibit "A" entitled "Order for Disbursement of Funds," the original of which is attached to and part of the document dated January 12, 1972, entitled "Stipulation to Vacate, Set Aside and Revoke Decree and Enter New and Different Decree," said document having been designated at page 24 of the clerk's transcript on appeal.

In her declaration in support of the order to show cause Mrs. Severdia stated that the check for said proceeds, which was made payable to her and Alaimo, was delivered to Alaimo; that thereafter she received a letter from Alaimo claiming a lien against said funds for $3,112 attorney's fees and $63.70 for costs and stating he was refusing to pay over the funds until Mrs. Severdia endorsed the check to permit him to pay to himself the fees and costs claimed by him; that Alaimo did not bill or otherwise inform her that she owed such fees or costs; that Alaimo was not entitled to such fees; that Alaimo at all times represented to her that the fees awarded in the divorce action were the only fees to which he would be entitled; that Alaimo was awarded $650 plus $38 in costs and that this sum of $688 plus an additional sum of $300, making a total of $938, has been paid to Alaimo as attorney fees; and that Alaimo has been fully and reasonably compensated for the services rendered by him on her behalf.

Alaimo appeared in response to the order to show cause and filed a counterdeclaration in which he admitted he did not bill or otherwise inform Mrs. Severdia of his total fees until January 18, 1972, because the litigation and issues between the parties were still pending relative to the separate property to be distributed and he could not ascertain the amount owing him for his services. He also admitted receiving $650 attorney's fees and $38 costs from the husband pursuant to the order of the court and that such award was made on account and not in full payment for all services rendered to Mrs. Severdia. Alaimo's declaration sets forth facts purporting to establish an agreement on the part of Mrs. Severdia and her father, one of the interveners, to pay Alaimo a reasonable fee for his services and states that Alaimo was paid $200 by Mrs. Severdia's father on account of such fees. Alaimo states that it is not true that he represented to Mrs. Severdia that the fees to be awarded by the court were the only fees to which he would be entitled. Alaimo states further that he is entitled to the sum of $4,000 as a reasonable fee for his services to which he credits the sum of $888 received as fees and costs, leaving a balance of $3,112 plus costs owing in the sum of $63.70, or a total of $3,175. In support of the reasonableness of the $4,000 fee Alaimo sets out the factual basis upon which he predicates such fees.

Mrs. Severdia filed a declaration in response to Alaimo's declaration in which she denies essentially that there was an agreement for fees as allged by him and declares that Alaimo agreed to repay her father the $200 paid by him upon receiving the fees that would be ordered to be paid him by the husband in the dissolution of marriage proceedings. A declaration to the same effect was filed by Mrs. Severdia's father. These declarations were, in turn, countered by Alaimo who denied the allegations therein made.

In a reply memorandum filed in the court below Alaimo alleges that there was attached to the stipulation vacating and setting aside the first order for disbursement of funds the document designated "Exhibit A" which was a copy of the "Order for Disbursement of Funds" subsequently signed by the judge.[3] In a further declaration Mrs. Severdia declared that she signed the stipulation but that when she did so "Exhibit A" was not attached to it; that at no time did Alaimo advise her that "Exhibit A" called for his name to appear on the check or that it was his intent to withhold this check for the payment of additional fees; and that Alaimo told her that the funds would be distributed through the respective attorneys' offices and he would forward her share of the proceeds.

Upon a consideration of these declarations and the memoranda of counsel the trial court found that it had jurisdiction over the community property of the parties; that Mrs. Severdia's share of the proceeds of the sale of the residence of the parties constituted community property subject to the order of the court; that her share of the funds came into the possession of Alaimo; that he is improperly withholding these funds, and that he has no lien on said funds. The court ordered Alaimo to deliver the balance of said proceeds in his possession to Mrs. Severdia within 10 days from June 7, 1972.

■ Alaimo first argues that the superior court had no jurisdiction to enter the order affecting him because he was not a party to the original action and a final judgment had already been entered in the dissolution proceeding. It is clear that Alaimo was not a party to this proceeding. The only parties to that action were Mrs. Severdia, her husband, and the interveners.

Reliance is placed by Alaimo on the rule that a judgment against a person not a party to the action is wholly void. (See *Fazzi* v. *Peters,* 68 Cal.2d 590, 594 [68 Cal.Rptr. 170, 440 P.2d 242]; *In re Wren,* 48 Cal.2d 159, 163 [308 P.2d 329]; *Wong* v. *Superior Court,* 246 Cal.App.2d 541, 546 [54 Cal.Rptr. 782]; *Melny* v. *Melny,* 90 Cal.App.2d 672, 676 [203 P.2d 588]; *Hutchinson* v. *California Trust Co.,* 43 Cal.App.2d 571, 575 [111 P.2d 401]; *Overell* v. *Overell,* 18 Cal.App.2d 499, 502 [64 P.2d 483].)

We also take cognizance of the rule that one who is not originally a party to an action can become a party only by order of the court upon proper application. (*Alpers* v. *Bliss,* 145 Cal. 565, 570 [79 P. 171]; *Overell* v. *Overell, supra,* 18 Cal.App.2d 499, 502; see Code Civ. Proc., § 389.5.)

---

[3]This is the "Exhibit A" referred to in the margin (fn. 1) and the subject of the motion to augment the record. As already pointed out the "Order for Disbursement of Funds" states, among other things, that the funds to which Mrs. Severdia was entitled were to be disbursed to Mrs. Severdia and Alaimo.

In *Spencer* v. *Spencer,* 252 Cal.App.2d 683 [60 Cal.Rptr. 747], the reviewing court was presented with a situation similar to that which confronted the court below in the present case. In *Spencer,* it was held that a court in a divorce action had the power to order the former attorneys of the wife to appear in the action and to adjudicate their claim to an interest in a bank account which the attorneys held in their name in trust for the parties in the divorce action. The bank account belonged to the husband under a subsequently executed property settlement agreement. After their discharge by the wife the attorneys asserted a lien on the account which they allegedly acquired by virtue of their relationship as her attorneys and as joint trustees of the account. The reviewing court held that the trial court had jurisdiction to adjudicate the claim of the attorneys and that it was proper for the court to order them to appear by the issuance of an order to show cause. (At p. 688.) The appellate court stated: "It is settled that under proper circumstances a person may be made a party to the record (and a party to the action for appeal purposes) by an order to show cause [citations]." (At p. 688.)

In the light of *Spencer* and the circumstances of the instant case we conclude that the court below had jurisdiction to adjudicate the rights of Alaimo in the subject funds and that it acquired jurisdiction over him for purposes of such adjudication by the issuance of the order to show cause. By asserting a lien Alaimo in essence claimed an interest in the property of a party to the dissolution of marriage proceeding. The trial court had found that certain funds were the community property of Mrs. Severdia and her husband and that therefore they were subject to the disposition of the court in the dissolution proceeding. The court in its findings of fact and conclusions of law ordered that said funds should be divided equally between Mrs. Severdia and her husband and that the trustee who was holding such funds should deliver them to their respective attorneys. In its interlocutory judgment dissolving the marriage the court specifically ordered that the subject funds be divided equally between the parties. A subsequently executed stipulation and the "Order for Disbursement of Funds" predicated thereon provided, in relevant part, that "Russell Green [the trustee] *will disburse* said funds: . . . One Quarter (1/4) thereof to Petitioner WINNIE ANN SEVERDIA and JOHN C. ALAIMO, her Attorney, . . ." (Italics added.) This order made subsequent to the interlocutory judgment did not purport to adjudicate that Mrs. Severdia and Alaimo were the owners of said funds. It was merely an order to the trustee to deliver Mrs. Severdia's community property share of the subject proceeds to Mrs. Severdia and Alaimo. This direction was similar to that made in the order which adjudicated Mrs. Severdia's interest in said funds.

As observed in *Spencer,* ". . . it would be incongruous . . . to hold that a third party whose claim to property involved in a divorce action may be made a party to the action in order to adjudicate his rights therein even though his claim may have arisen independently before the divorce action, but that the court has no jurisdiction to bring in a person who acquired a claim to the property during actual litigation as a trustee." (252 Cal.App.2d at p. 688.)

The only important distinction between *Spencer* and the present case is that in *Spencer* there had not been a final judgment in the original divorce proceedings at the time the order to show cause was issued against the attorneys. While ordinarily once a final judgment has been entered in an action the court entering the judgment loses jurisdiction over the action (see *Stevens* v. *Superior Court,* 7 Cal.2d 110, 112 [59 P.2d 988]; *Lankton* v. *Superior Court,* 5 Cal.2d 694, 696 [55 P.2d 1170]; *Estate of Steiner,* 240 Cal.App.2d 78, 82 [49 Cal.Rptr. 352]), this rule is not applicable under the circumstances of this case.

In the instant case the trial court did not purport to make a new and different judgment but to enforce a judgment previously made. Section 4380 of the Civil Code provides that "Any judgment, order, or decree of the court made or entered pursuant to this part may be enforced by the court by execution, attachment, the appointment of a receiver, contempt, *or by such other order or orders as the court in its discretion may from time to time deem necessary.*" (Italics added.)

█ The order appealed from is in the nature of a writ of assistance in the action for divorce; it is a process issued from a court of equity to place Mrs. Severdia in possession of property awarded her in the interlocutory judgment. (*Kirsch* v. *Kirsch,* 113 Cal. 56, 61-64 [45 P. 164]; see *Fox* v. *Stubenrauch,* 2 Cal.App. 88, 92 [83 P. 82]; and see Code Civ. Proc., § 187.) "The writ relates back to and operates upon those rights only which have been determined by the judgment. The reason for the issuance of the writ is to give effect to rights awarded by the judgment." (*Kirsch* v. *Kirsch, supra,* at p. 62.) █ "This writ is a process issued from a court of equity to enforce its decree, and its power to issue the writ results from the principle that jurisdiction to enforce a decree is co-extensive with jurisdiction to hear and determine the rights of the parties—that the court may do complete justice by declaring the right and enforcing a remedy for its enjoyment." (*Fox* v. *Stubenrauch, supra,* at p. 93; see *Kirsch* v. *Kirsch, supra,* at p. 64.)

As observed in *Kirsch,* "Our statutory action of divorce in its nature pertains to equity. . . . It has . . . jurisdiction to determine whether or not a given piece of property is or is not community property. Having

these ample powers to adjudge and to award, it would be anomalous indeed if, under our simplified procedure, it were obliged to send either of the parties into another forum to prosecute another action to obtain possession of that which it had the power to give." (113 Cal. at pp. 63-64.)

We observe, further, that in the instant case Alaimo consented to the jurisdiction of the court below over his person. His appearance was not a special appearance made for the sole purpose of objecting to lack of jurisdiction of the person without submitting to such jurisdiction. (See *Davenport* v. *Superior Court,* 183 Cal. 506, 510-511 [191 P. 911]; *Varra* v. *Superior Court,* 181 Cal.App.2d 12, 14 [4 Cal.Rptr. 920].) His attack on the court's jurisdiction in the proceedings below was a general appearance by which he intentionally submitted himself to the jurisdiction of the court in that proceeding for the purpose of obtaining an adjudication of the court going to the merits of the case. (See *Harrington* v. *Superior Court,* 194 Cal. 185, 189 [228 P. 15]; *Davenport* v. *Superior Court, supra,* at p. 511.) Alaimo voluntarily appeared in response to the order to show cause and asked the trial court to adjudicate his right to the funds in his possession. That issue was tried. Under these circumstances the trial court had jurisdiction to determine whether there was any merit to his claim. (*Pacific States Savings etc. Co.* v. *Harwell,* 204 Cal. 370, 371-373 [268 P. 341]; *Rafferty* v. *Kirkpatrick,* 29 Cal.App.2d 503, 506 [85 P.2d 147].) The trial court found against Alaimo. As to the factual issues presented there is substantial evidence in the records to support the trial court's determination.

Adverting to the question whether Alaimo was entitled to assert an attorney's lien, we observe that several cases have held that there can be no attorney's lien in situations such as that presented in the present case. (See *Echlin* v. *Superior Court,* 13 Cal.2d 368, 373 [90 P.2d 63, 124 A.L.R. 719]; *Spencer* v. *Spencer, supra,* 252 Cal.App.2d 683, 691; *Wagner* v. *Sariotti,* 56 Cal.App.2d 693, 697 [133 P.2d 430]; but see *Isrin* v. *Superior Court,* 63 Cal.2d 153, 157 [45 Cal.Rptr. 320, 403 P.2d 728]; and see *Hulland* v. *State Bar,* 8 Cal.3d 440, 447, fn. 8 [105 Cal.Rptr. 152, 503 P.2d 608].) In *Echlin* and *Wagner,* it is declared that an attorney has neither a retaining nor a charging lien for compensation in the absence of a contract containing an agreement for a lien. In the present case the trial court found that there was no such agreement.

We observe, moreover, that under the facts of this case Alaimo could not acquire a common law retaining lien even if one exists in California. The funds in question were received by Alaimo pursuant to the order of the court by a check payable to him and Mrs. Severdia. There is no indication in the order that the check was payable in this manner as security for

his fees. The trial court specifically found that Alaimo came into possession of Mrs. Severdia's community property share of such funds by reason of the court's exercise of its jurisdiction in the division of the community property of the parties. In view of the fiduciary relationship that exists between an attorney and his client, and in view of the trial court's implied finding that there was no agreement that the funds were being held subject to a lien for services, the check delivered pursuant to the court order and the proceeds it represented were held by Alaimo as a trustee. If a possessory lien or a common law retaining lien does exist in California it does not attach to property coming into an attorney's hands as trustee. (*Hulland* v. *State Bar, supra,* 8 Cal.3d 440, 447; *Spencer* v. *Spencer, supra,* 252 Cal.App.2d 683, 692-693.)

The order is affirmed.

Sims, J., and Elkington, J., concurred.