**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION,** Complainant,

v.

**Isadore NADLER, Respondent.**

**No. 89–178.**

Supreme Court of Iowa.

Aug. 16, 1989.

Charles L. Harrington and Norman G. Bastemeyer, Des Moines, for complainant.

David Nadler, Cedar Rapids, for respondent.

Considered by LARSON, P.J., and CARTER, NEUMAN, SNELL, and ANDREASEN, JJ.

NEUMAN, Justice.

The Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) charged that attorney Isadore Nadler violated the Iowa Code of Professional Responsibility by (1) retaining client funds intended to be applied towards settlement of a lawsuit (hereinafter the "Powell" matter); (2) neglecting four separate probate matters and failing to respond to the clerk of court's notices of delinquency; (3) neglecting and incompetently handling a dissolution of marriage action; (4) committing an assault (hereinafter the "Martin" matter); and (5) failing and refusing to cooperate with the committee in its investigation and processing of these complaints. Following hearing, a division of the grievance commission found Nadler's actions with regard to the Powell matter breached DR 6–101(A)(3), DR 7–101(A)(1), (2) and (3), and EC 9–6 (neglect of a legal matter; failing to seek client objectives and carry out a contract of employment to the prejudice of the client; failure to uphold integrity of the profession). It found Nadler's inaction with regard to the probate matters and his unpreparedness in the dissolution of marriage case violated DR 1–102(A)(1), (5), and (6), EC 6–4, DR 6–101(A)(2) and (3) (prohibiting conduct that is prejudicial to the administration of justice and adversely reflects on fitness to practice law; neglect and inattention to legal work). And it concluded that his assaultive behavior in the Martin matter violated DR 1–102(A)(5) and (6) and EC 9–5 [1] (morally reprehensible conduct prejudicial to the administration of justice and reflecting adversely on lawyer's fitness to practice law). The commission recommended that Nadler's license be suspended a minimum of one year.

Nadler has appealed some, but not all, of these findings in accordance with Iowa Supreme Court Rule 118.11. He apparently concedes his neglectful handling of the probate and dissolution actions, and we will consider them further only in connection with the imposition of an appropriate sanction. He frames his appellate issues as follows: (1) whether the grievance commission's findings with regard to the Powell and Martin matters should be disregarded because they are based on requests for admissions that were deemed admitted in alleged violation of Nadler's fifth amendment privilege against self-incrimination; and (2) whether the facts support the commission's findings of ethical breach with regard to the Powell matter.

 We review the record and the commission's findings de novo. Iowa Sup. Ct.R. 118.11. The burden is on the committee to prove by a convincing preponderance of the evidence that the respondent has violated the Code of Professional Responsibility. *Committee on Professional Ethics and Conduct v. Haney,* 435 N.W.2d 742, 743 (Iowa 1989). While we are not bound by the commission's recommendations, we accord them respectful consideration. *Committee on Professional Ethics and Conduct v. Ulstad,* 376 N.W.2d 612, 614 (Iowa 1985).

I. *Request for Admissions.* Nadler's first challenge principally involves his criminal conviction for assaulting Rose Martin. Ms. Martin was Nadler's mother-in-law's housekeeper. Nadler and Martin came to blows one morning following an argument. Ms. Martin, who stands just over five-feet tall, claimed she was attacked by Nadler; Nadler, who is five-feet-nine-inches tall, claimed self-defense.

The State charged Nadler with assault. He pled not guilty and waived a jury trial. Following a bench trial, the court concluded that Nadler, not Martin, had been the aggressor. Medical evidence revealed that Martin suffered serious facial contusions and a chipped tooth, injuries consistent with multiple blows to the face. Nadler suffered a dislocated finger. The trial

---

**1.** The commission's reference to *EC 9–5* appears to be a clerical error, inasmuch as EC 9–5 prohibits commingling of client funds, a matter not at issue with regard to the assault. Nadler was charged with conduct that squarely falls within the prohibition of *EC 1–5* and we are convinced that is what the commission intended. *See Committee on Professional Ethics & Conduct v. LaPointe,* 415 N.W.2d 617, 619 (Iowa 1987) (assault by lawyer was "illegal and morally reprehensible"). We thus summarily reject Nadler's assignment of error on this point.

court specifically found Nadler's witnesses to be less credible than Martin's.

Nadler was convicted of assault resulting in injury in violation of Iowa Code section 708.2(2) (1987). He appealed. In March 1989 his conviction was affirmed, subject to resentencing, in an unpublished opinion of this court. *See State v. Nadler,* 438 N.W.2d 19 (Iowa 1989) (table).

■ In connection with the present disciplinary action concerning these same events, the committee filed pertinent requests for admissions along with the complaint. Nadler answered neither. At his hearing before the grievance commission, Nadler stood on his right under court rule 118.6 [2] not to incriminate himself concerning the assault. He further claimed that this privilege, though not previously asserted, applied to the request for admissions as well.

The committee contended that Nadler's failure to timely assert his fifth amendment right operated as a waiver of the privilege and that the interrogatories should thus be deemed admitted for lack of response. The presiding officer of the commission ruled in the committee's favor. Nadler challenges that ruling on appeal.

We have long held that an attorney caught between the responsibility to cooperate with a disciplinary investigation and the right to be free from self-incrimination, cannot merely stonewall the committee to avoid the effect of the discovery procedures that are incorporated in court rule 118.6. In *Committee on Professional Ethics & Conduct v. Shaffer,* 230 N.W.2d 1, 3 (Iowa 1975), we resolved the supposed dilemma this way:

> Reading rules 127 and 118.6 together, we see no conflict. When a request for an admission is filed in a disciplinary proceeding, the addressee may within the prescribed time answer the request, or

he may object to it on the ground of self-incrimination or other ground, or he may do neither—in which event the matter stands admitted by virtue of the terms of rule 127.

More recently, in *Committee on Professional Ethics & Conduct v. Horn,* 379 N.W.2d 6, 9 (Iowa 1985), we noted that our profession is strengthened by self-discipline and thus attorneys, though sharing with all citizens the right to be free from self-incrimination, must cooperate with discovery requests even if only to announce the exercise of fifth amendment rights.

As these opinions reveal, the commission correctly accepted the committee's interpretation of court rule 118.6. The rule clearly excuses an attorney from answering a request for admission only "if the answer would be self-incriminatory." Iowa Sup. Ct.R. 118.6. By asserting his privilege, Nadler could have easily complied with the discovery request without incriminating himself. By choosing to ignore his duty to cooperate with the committee, Nadler merely displayed his disregard for the committee's unenviable, but nevertheless important, work. That disregard is only amplified by the fact that Nadler ignored *all* requests for admissions, not just those that might be reasonably regarded as calling for a self-incriminating answer.

In summary, the committee was authorized by our court rules and the Rules of Civil Procedure to establish the operative facts underlying Nadler's unethical conduct in the Martin (and Powell) matters via his unanswered requests for admissions which, by virtue of Iowa Rule of Civil Procedure 127 and court rule 118.6, were deemed admitted. The assignment of error is without merit.

■ II. *Attorney's Lien.* In November 1986, Nadler undertook the representation

---

2. Iowa Supreme Court Rule 118.6 provides, in pertinent part:

 In any disciplinary proceeding or action taken by the Committee on Professional Ethics and Conduct, discovery shall be permitted as provided in R.C.P. 121 to 134 inclusive; 140 and 141; and in 154 to 158. The attorney against whom a complaint has been filed, in addition to the restriction stated in R.C.P. 122(a) shall not be required to answer an interrogatory pursuant to R.C.P. 126; a request for admission pursuant to R.C.P. 127; a request upon oral examination pursuant to R.C.P. 140; or a question upon interrogatories, pursuant to R.C.P. 150; if the answer would be self-incriminatory.

of Robert E. Powell in connection with litigation over Powell's delinquent car payments and the possible repossession of his vehicle by a Waterloo credit union. Nadler negotiated a settlement on Powell's behalf, in anticipation of which Powell gave Nadler $500 to pay to the credit union.

On the day Powell came forward with the funds to cover the settlement, Nadler asked for payment on his fees as well. Powell was not prepared to comply. So instead of advancing the $500 to Powell's creditor, Nadler retained the sum to secure his own fee, claiming an "attorney's lien" under Iowa Code section 602.10116.

With the credit union's settlement thus jeopardized, Powell was forced to use other funds to avoid repossession of his vehicle. He then sued Nadler in small claims court for return of the $500. The small claims magistrate, citing the general rule that an attorney's lien does not extend to monies left with an attorney as trustee for a special purpose, found in Powell's favor. Nadler returned the $500 to Powell only after Powell obtained judgment against him.

The committee charged, and the grievance commission found, that Nadler's action breached his ethical duty to honor his contract of employment with Powell, and to take no action that would prejudice or otherwise impede the lawful objectives of his client. Nadler contended before the commission, and urges on appeal, that his action was guided by the plain language of Iowa Code section 602.10116. That section states, in pertinent part, that "[a]n attorney has a lien for a general balance of compensation upon ... [m]oney in the attorney's hands belonging to a client." Iowa Code § 602.10116(2).

We have had no previous occasion to consider the full import of the attorney's lien statute in this context. Perhaps that is because it is unthinkable that a lawyer would satisfy a fee bill out of funds entrusted by a client for the express purpose of settling a lawsuit. Nadler, it appears, read the words of section 602.10116(2) in

total isolation from his overriding professional responsibility "to inspire the confidence, respect and trust" of his client. *See* EC 9–6.

The general rule, as noted by the small claims magistrate, is that "[p]roperty or funds delivered for a special purpose by a client to his attorney cannot constitute the subject matter of a retaining lien in favor of such attorney." 7A C.J.S. *Attorney & Client* § 377 at 745 (1980); 7 Am.Jur.2d *Attorneys at Law* § 318, at 333 (1980). Recognizing that an attorney cannot allow a fee claim to conflict with the lawyer's obligation as a trustee, other states have uniformly applied this general rule in the face of broad statutory and common law lien rules giving lawyers a blanket lien on client funds. *Florida Bar v. Bratton*, 413 So.2d 754, 755 (Fla.1982); *King v. Tyler*, 148 Ga.App. 272, 274, 250 S.E.2d 784, 786 (1978); *Akers v. Akers*, 233 Minn. 133, 141, 46 N.W.2d 87, 92 (1951); *Brauer v. Hotel Assocs., Inc.*, 40 N.J. 415, 420, 192 A.2d 831, 834 (1963), *cert. denied, sub. nom. In re Brauer*, 387 U.S. 944, 87 S.Ct. 2077, 18 L.Ed.2d 1330 (1967); *Micheller v. Oberfrank*, 153 N.J.Super 34, 36, 378 A.2d 1162, 1164 (App.Div.1977); *see also Hulland v. State Bar*, 8 Cal.3d 440, 447, 503 P.2d 608, 612, 105 Cal.Rptr. 152, 156 (1972) (reiterating rule that attorney has no lien on client funds placed in trust to attorney, regardless of whether such lien exists in California); *Severdia v. Alaimo*, 41 Cal.App.3d 881, 891, 116 Cal.Rptr. 405, 412 (1974) (same); *Spencer v. Spencer*, 252 Cal. App.2d 683, 691–92, 60 Cal.Rptr. 747, 754 (1967) (same).

The fundamental principles of professionalism embraced in EC 9–6 compel us to join the majority of states adhering to the general rule.[3] By keeping his client's money instead of applying it to the purpose for which he received it, Nadler clearly failed to seek the lawful objectives of his client and prejudiced his client's cause in violation of DR 7–101(A)(1), (2) and (3). The commission was correct in so ruling.

---

**3.** We reject Nadler's vagueness challenge to EC 9–6 as untimely raised and entirely without merit.

**III.** *Sanction.* As noted earlier in this opinion, Nadler's unprofessional conduct extends beyond assaulting Rose Martin and breaching the trust of Robert Powell. Standing uncontested are delinquencies in four probate matters, our concern for which is compounded by Nadler's repeated failure to respond to the clerk of court and committee inquiries concerning his dilatory behavior. A lawyer's failure to respond to investigatory committees reflects disdain for the disciplinary system and constitutes a separate act of misconduct. *Committee on Professional Ethics & Conduct v. Stienstra,* 390 N.W.2d 135, 137 (Iowa 1986).

In the dissolution action giving rise to the remaining complaint, Nadler's unpreparedness was so "painfully apparent" to the court that it recessed proceedings *sua sponte* "until such time as real trial preparation has been had and the matter can proceed to expeditious hearing." Nadler's only explanation for this highly unusual turn of events is that his client wanted to convince his children that he really did not wish to pursue the divorce. Were that truly the motive behind Nadler's appearance of incompetence, we should think the record would so show. It does not.

What the record *does* show is a pattern of behavior that departs from the reputation established by Nadler during his thirty-nine years in the practice of law. Instead, it reflects a current disregard for his clients' interest, his own personal integrity, and the high standards of the legal profession. The transcript of proceedings before the grievance commission serves only to affirm, rather than dispel, our concern for Nadler's current fitness to practice law. As one commission member candidly observed, Nadler appeared to be "totally unprepared" for his own hearing and displayed an "overall attitude ... of detachment." In that respect, the case is not unlike *Committee on Professional Ethics & Conduct v. Paulos,* 410 N.W.2d 260, 262 (Iowa 1987), in which the respondent attorney displayed such confusion with regard to the entire proceeding that we made his reinstatement contingent on a satisfactory showing of mental fitness to handle the legal business entrusted to him.

The one-year suspension proposed by the commission is within the range of sanctions we have imposed for similar violations of ethical conduct. *See, e.g., Committee on Professional Ethics & Conduct v. Christoffers,* 348 N.W.2d 227, 230 (Iowa 1984) (two-year suspension for retaining fee out of federal benefits); *Committee on Professional Ethics & Conduct v. Paulos,* 410 N.W.2d 260, 262 (Iowa 1987) (six-month suspension for dilatory handling of probate matters); *Committee on Professional Ethics & Conduct v. Lapointe,* 415 N.W.2d 617, 620 (Iowa 1987) (fourteen-month suspension for assault and tampering with a witness). While we are not bound by the commission's recommendation, we have given it our careful consideration and find it appropriate under the circumstances.

Accordingly, we suspend respondent's license to practice law in the courts of this state indefinitely, with no possibility of reinstatement for one year. This suspension applies to all facets of the practice of law. *See* Iowa Sup.Ct.R. 118.12.

Upon any application for reinstatement, respondent shall establish that he has not practiced law during this suspension period and that he has in all other ways complied with the requirements of our rules pertaining to suspended attorneys. Any application for reinstatement shall be accompanied by satisfactory evidence that respondent is suffering from no physical or mental disability that would interfere with his competent handling of legal business entrusted to him.

We further order that the costs of this action be assessed against the respondent in accordance with Iowa Supreme Court Rule 118.22.

LICENSE SUSPENDED.