**COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION, Complainant,**

v.

**Isadore NADLER, Respondent.**

**No. 90–1599.**

Supreme Court of Iowa.

March 20, 1991.

Charles L. Harrington, Des Moines, for complainant.

David Nadler, Cedar Rapids, for respondent.

Considered by McGIVERIN, C.J., and HARRIS, NEUMAN, SNELL, and ANDREASEN, JJ.

ANDREASEN, Justice.

In May 1990, the Committee on Professional Ethics and Conduct of the Iowa State Bar Association (committee) charged Isadore Nadler with three counts of unethical and unprofessional conduct. Following hearing, a division of the Grievance Commission of the Supreme Court of Iowa (commission) found Nadler had violated provisions of the Iowa Code of Professional Responsibility for Lawyers. The commission recommended Nadler's license to practice law be suspended for a period of three years.

We review de novo the commission's findings, conclusions and recommendations. Iowa Sup.Ct.R. 118.11. The committee has the burden of proving the violations as charged by a convincing preponderance of the evidence. *Committee on Professional Ethics & Conduct v. Seff*, 457 N.W.2d 924, 925 (Iowa 1990).

Isadore Nadler was admitted to practice law in Iowa in 1950. He maintained a law practice in Waterloo, Iowa, from 1953 until his license was suspended by us in August of 1989. He also secured a real estate license in 1989.

## I. *Greer Matter.*

The commission found Nadler violated DR 6–101 (failure to act competently) in his handling of a legal matter entrusted to him. The commission also found he violated DR 6–102 (attempt to limit liability to client) when he offered to pay his clients the sum of $1900 after discovering the statute of limitations had run out on the personal injury claim he was handling.

David Greer, Jr., a seventeen-year-old high school senior, was injured in a collision on February 8, 1985. He was a passenger on a school bus that was struck by an automobile driven by Leland Sommerfelt and owned by Ronald Sommerfelt. David's mother retained Nadler to represent David and his parents in connection with their claims against the Waterloo Independent School District and the Sommerfelts.

Nadler secured a patient's waiver and obtained medical records relating to David's injuries. He contacted the insurance carriers of both the school district and the Sommerfelts advising them of his employment as legal counsel for the Greers.

In January of 1986, Nadler obtained a partial settlement of his clients' claims. The school district insurance carrier paid $2000 to David and his parents for a covenant not to sue and a limited release. Nadler retained $500 as legal fees and $100 as advance costs from the cash settlement. He told the Greers he was going to bring suit against the Sommerfelts.

The two-year statute of limitations ran on the personal injury claims without Nadler having filed suit. In March 1987, the Greers contacted Nadler to find out what was going on. Nadler told them the lawsuit had not been filed and that the statute of limitations had run. Nadler offered to pay the Greers the sum of $1900, this being the amount he considered their claim was worth less his one-third contingent fee and less $100 for expenses advanced. The offer was not accepted. Rather, the Greers

brought an action for legal malpractice against Nadler. The action was tried to the court, and on November 8, 1988, the court entered judgment against Nadler for $35,500 ($35,000 for David and $500 for his parents). The judgment has not been satisfied. The Greers have foreclosed on two parcels of real estate and garnished attorney fees to secure partial satisfaction of the judgment.

Based on these facts, the commission found Nadler had violated two disciplinary rules. In addition to the transcript of the proceedings before the commission, we review the exhibits offered and received at the hearing. Here, a transcript of the evidence in the legal malpractice action was received as an exhibit. In our de novo review, we agree with the commission's findings but make additional findings and conclusions.

Although Nadler, in September of 1985, secured from Dr. Crouse, an orthopedic specialist, a written medical evaluation suggesting David had no long-term disability, Nadler was aware David continued to have back and knee problems after the evaluation. After securing the partial settlement in January of 1986, Nadler suggested David get a second opinion from Dr. Delbridge, an orthopedic surgeon. On April 25, 1986, Greer was examined by Dr. Delbridge. Greer continued to experience back and knee problems. He was again seen by Dr. Delbridge on December 24, 1986. In the opinion of Dr. Delbridge, Greer's injury to his back and knee would continue, and he would have future pain and problems. In his opinion, these injuries were related to the accident on February 8, 1985. Although he was aware of Dr. Delbridge's examination of his client, Nadler did not talk to the surgeon or secure a written report from him.

In August and October of 1986 the claims representative of Sommerfelt's insurance carrier wrote letters to Nadler requesting the opportunity to sit down and discuss possible settlement of the Greers' claim and also requesting Nadler furnish an update of the medical condition of his client. Nadler did not respond to these requests.

Although Nadler advised Greers of his failure to timely file suit, he did not alert them of their possible malpractice claim nor did he advise them to seek the advice of another attorney. Contrary to Nadler's explanation, we do not find his offer of $1900 was intended as a gift.

Nadler acted pro se in defense of the legal malpractice suit. The district court found Nadler's handling of the Greers' legal matter was negligent in (1) attempting to negotiate a settlement of the claim without having appropriate medical information upon which to value the claim, (2) attempting to negotiate a settlement at a level that was not authorized by his clients, and (3) allowing the statute of limitations to run without filing a suit.

The court also found Nadler displayed the same lack of professional care and competence in defending the legal malpractice case as he did in representing the Greers. He failed to respond to requests for admissions. He responded untimely and improperly to the plaintiffs' motion for partial summary judgment. He filed an untimely request to designate additional expert witnesses. He was late for the beginning of the trial, and he was late in returning from several recesses during the trial. After the completion of the plaintiffs' case, Nadler's request for a recess was granted. However, Nadler failed to return to court following the recess, and the trial was completed in Nadler's absence with no additional evidence presented on his behalf. No appeal was taken from the district court judgment.

While the legal malpractice action was pending, Nadler conveyed two parcels of real estate to his wife without consideration. On November 10, 1988, one day after judgment was entered, the Greers filed an action to set aside the Nadler conveyance as fraudulent. Following hearing, the court on February 21, 1989, granted the Greers' motion for summary judgment and set aside the Nadler deed. No appeal was taken. Nadler acknowledged he "goofed" by not preparing a proper resistance to the

motion for summary judgment. The two parcels of real estate held by Nadler were sold at sheriff's sale, and the proceeds of approximately $22,000 were applied as partial satisfaction of the judgment.

While an honest mistake made by a lawyer in handling a client's legal matter does not ordinarily afford a basis for disciplinary action, *Committee on Professional Ethics & Conduct v. Wright*, 178 N.W.2d 749, 752 (Iowa 1970), incompetence is grounds for disciplinary action. There is a convincing preponderance of evidence of Nadler's neglect and indifference in handling legal work. We find the acts and conduct of Nadler, as charged in count I of the complaint, violated DR 6–101 and DR 6–102(A) as found by the commission and, in addition, violated EC 1–5 (requires high standards of professional conduct), EC 6–1 (requires competent and proper care in representing clients), EC 6–4 (requires adequate preparation for and appropriate attention to legal work), EC 9–2 (requires lawyers fully and promptly to inform clients of developments in matters being handled for the client), EC 9–6 (requires lawyers to uphold the integrity of the profession and to inspire confidence of clients and public), and DR 1–102(A) (prohibits lawyer misconduct). *See also* Annotations, *Negligence, Inattention, or Professional Incompetence of Attorney in Handling Client's Affairs in Personal Injury or Property Damage Actions as Ground for Disciplinary Action—Modern Cases*, 68 A.L.R.4th 694 (1989); *Attorney's Conduct in Connection with Malpractice Claim Against Himself as Meriting Disciplinary Action*, 14 A.L.R.4th 209 (1982). L. Gaudineer, *Ethics and Malpractice*, 26 Drake L.Rev. 88 (1976).

## II. *Denton Purchase.*

After he secured a real estate license, Nadler was employed as a sales person for Peachtree Realty. Betty Graybill, the executor of the Herman Boike estate, listed a house with Peachtree Realty. Nadler located a prospective purchaser, Willie Denton, who offered to purchase the property on a monthly installment contract. This offer was rejected by the executor who wanted a cash sale. Nadler then contacted and acted as attorney for Robert Bird. Bird offered to purchase the property for $6000, which was $2000 less than the Denton offer, with an understanding that he would then sell Denton the property on installments as originally offered to the executor. Nadler did not advise the executor of his representation of the buyer.

We agree with the commission's conclusion that Nadler violated EC 9–2 (requires lawyers to avoid the appearance of professional impropriety). *See Committee on Professional Ethics & Conduct v. Getscher*, 356 N.W.2d 557, 559 (Iowa 1984).

## III. *Edwards Purchase.*

As a realtor, Nadler handled a sale of land between Roger Kuhn, seller, and Kenny Edwards, purchaser. At the time of closing the sale in August of 1988, Nadler received a check for $310.15 made payable to the seller with the understanding that the check would be delivered when the seller completed the installation of a fence. In November of 1988, the buyer notified Nadler that the fence had been installed and that the check should be released to Kuhn. When the seller did not receive the check he contacted Nadler inquiring as to why it was not released to him. Calls were made in January and February of 1989 with no response from Nadler. In March, Nadler advised the seller that additional abstract expense in the sum of twenty-five dollars had been incurred to clear the title and that the check would be turned over to him when he received payment of one-half of the abstract expense of $12.50. The seller forwarded the check for the abstract expense which was received in the early part of March 1989. Nadler released the check on April 1, 1989. The commission concluded the check had been returned before the claim was filed and determined that there was insufficient evidence to support the violation charged. We agree.

## IV. *Failure to Respond.*

Nadler received from the committee six letters advising him that the committee had

received complaints regarding three separate matters that later were identified in the three counts of the complaint filed with the commission. The notices were received by Nadler between November 1988 and May 1989. They advised him that his failure to respond could result in a separate complaint. The commission found Nadler's failure to respond was misconduct, citing *Committee on Professional Ethics & Conduct v. Stienstra*, 390 N.W.2d 135 (Iowa 1986).

We find the failure to cooperate and to answer inquiries from the committee violates EC 1-4 (requires lawyers to assist committee having responsibility for administration of disciplinary rules). *Committee on Professional Ethics & Conduct v. Ramey*, 424 N.W.2d 435, 436 (Iowa 1988); DR 1-102(A)(1) (prohibits violation of disciplinary rule), DR 1-102(A)(5) (prohibits conduct prejudicial to the administration of justice) and DR 1-102(A)(6) (prohibits any other conduct that adversely reflects on the fitness to practice law). *See Committee on Professional Ethics & Conduct v. Wenger*, 454 N.W.2d 367, 368 (Iowa 1990). An attorney commits a separate ethical violation by failing to answer the committee's request for a reply. *Committee on Professional Ethics & Conduct v. Horn*, 379 N.W.2d 6, 8 (Iowa 1985). *See also* Annotation, *Failure to Co-operate with or Obey Disciplinary Authorities as Ground for Disciplining Attorney—Modern Cases*, 37 A.L.R.4th 646 (1985).

## V. *Disposition.*

We give respectful consideration to the recommendations of the commission, but are not bound by them. *Seff*, 457 N.W.2d at 925. The commission recommended Nadler's license be suspended for three years. It further recommended the period of suspension date back to August 16, 1989, because the matter had been pending for an undue period of time.

In determining what discipline is appropriate, we consider prior disciplinary action taken against the lawyer. *Committee on Professional Ethics & Conduct v. Shepherd*, 431 N.W.2d 342, 344 (Iowa 1988). In 1985, a public reprimand was given Nadler for careless and incompetent handling of a matter. On August 16, 1989, we suspended Nadler's license indefinitely with no possibility of reinstatement for one year. *Committee on Professional Ethics & Conduct v. Nadler*, 445 N.W.2d 358, 362 (Iowa 1989). We required any application for reinstatement be accompanied by satisfactory evidence that he suffered from no physical or mental disability that would interfere with his competent handling of legal business entrusted to him. *Id.* This suspension arose from five separate actions taken by Nadler prompting the commission to file a formal complaint in 1987 which resulted in a hearing in 1988 and our final decision in 1989. We concluded Nadler had violated the code of professional responsibility by his criminal assault of Rose Martin, his breach of trust of a client, his delinquent handling of four probate matters, his failure to respond to committee inquiries, and his unpreparedness in a dissolution action. *Id.* We stated:

> The transcript of proceedings before the grievance commission serves only to affirm, rather than dispel, our concern for Nadler's current fitness to practice law. As one commission member candidly observed, Nadler appeared to be "totally unprepared" for his own hearing and displayed an "overall attitude ... of detachment."

*Id.*

Under the circumstances, we find the commission's recommendation of a three year suspension appropriate, but we do not believe it is appropriate to have the suspension date back to August 16, 1989. We do not consider the delay between the date of the events prompting the filing of the complaint and the actual filing of the complaint by the committee in May of 1990 as a mitigating factor. Nothing that has occurred during the delay mitigates the seriousness of Nadler's action and conduct. *See Committee on Professional Ethics & Conduct v. Hall*, 463 N.W.2d 30, 36 (Iowa 1990).

Accordingly, we extend the suspension of Nadler's license to practice law indefinitely,

with no possibility of reinstatement for three years from the filing of this decision and order. The requirements for reinstatement set forth in our prior opinion filed August 16, 1989, shall remain.

We further order that the costs of this action be assessed against Nadler. Iowa Sup.Ct.R. 118.22.

LICENSE SUSPENDED.