The **COMMITTEE ON PROFESSIONAL ETHICS AND CONDUCT OF THE IOWA STATE BAR ASSOCIATION**, Complainant,

v.

**Stephen B. JACKSON, Respondent.**

No. 92–774.

Supreme Court of Iowa.

Nov. 25, 1992.

Norman G. Bastemeyer and Charles L. Harrington, Des Moines, for complainant.

Mark McCormick of Belin, Harris, Lamson and McCormick, P.C., Des Moines, for respondent.

Considered by McGIVERIN, C.J., and LARSON, LAVORATO, NEUMAN and SNELL, JJ.

McGIVERIN, Chief Justice.

In this attorney discipline proceeding involving respondent attorney Stephen B. Jackson, we review the Grievance Commission's findings, conclusions and recommendation pursuant to Iowa supreme court rule 118.10.

The Grievance Commission found that respondent Jackson violated several disciplinary rules. The violations stem from Jackson's drafting of wills for Delia Grovert and Gladys Kortson, each of whom left substantial bequests to John Gualtier, another of Jackson's clients, and from unauthorized receipt of probate attorney fees. The commission recommended a reprimand. Based on the record made before the Grievance Commission, we agree and reprimand the respondent.

I. *Background facts and proceedings.* Jackson has been licensed to practice law in Iowa since 1964. During the relevant time period involved, Jackson practiced with a Cedar Rapids law firm, which maintained a satellite office in Center Point. Although practicing primarily in family law, Jackson also probates ten to twenty decedents' estates per year.

A. *The Kortson matters.* Paul Kortson died October 2, 1986, survived only by his wife, Gladys. The Kortsons had no children. Gladys, as executor, became dissatisfied with her attorney's handling of her husband's estate, and she sought other counsel. She chose Jackson's name from the yellow pages of the Center Point telephone directory.

John Gualtier, a long time friend and employee of the Kortsons, drove Gladys to Jackson's Center Point office on November 4, 1986. Gladys and Paul had known Gualtier for 25 to 30 years. She first met him when he worked on the Kortson farm, and Gualtier remained a close friend ever since.

Gualtier often drove Gladys, age 85 in 1987, on her errands because she was unable to drive herself.

November 4 was the first time Jackson had met either Gualtier or Gladys. After their initial meeting, Jackson prepared a power of attorney naming Gualtier and his wife, Marion, as attorneys in fact, a letter for Gladys' signature discharging her former attorney, and a designation of attorney naming Jackson as the Paul Kortson estate attorney. Gladys signed these papers. The power of attorney was similar to one Gladys and Paul had signed in May 1984 that also had named Gualtier and Marion as attorneys in fact. Gladys also wanted Gualtier named as co-executor of Paul's estate.

On January 27, 1987, Jackson filed with the district court the designation of attorney, the application for appointment of Gualtier as co-executor, an order appointing the co-executor, a co-executor's oath, a report and inventory, and an application to establish attorney's fees.

The district court order fixing attorney fees of $6,627.29, the statutory maximum, was not filed until March 25. The application for Gualtier's co-executor fee was not made until the final report was filed on August 7, and the order authorizing Gualtier's fee was not filed until April 15, 1988. In the meantime, Jackson requested in his January 16, 1987, letter to Gladys that she write checks to the State of Iowa for inheritance taxes, to Jackson for $6,627.29, and to Gualtier for $1,656.83 (one-half of his statutory fee). The fees were based on the Paul Kortson estate valued in the probate inventory at $325,364.70. Jackson deposited his check in his firm's trust account on January 28. Gualtier's check was mailed to him that same day. Jackson withdrew one-half of his fees from the trust account on January 30 and the other half on March 31.

In early February 1987 Gladys asked Jackson to draft a new will for her which would leave all of her property, except $30,000, to John and Marion Gualtier, even though the Gualtiers were not in any way related to Gladys or Paul. Gladys also

wanted Gualtier to be the executor for her estate. Jackson knew that Gladys had already given the Gualtiers large cash gifts and a one-half interest in a truck. On April 15 Jackson met with Gladys about her new will according to her request. Gualtier again drove Gladys to Jackson's office. Gladys brought notes concerning her will, some of which were in Gualtier's handwriting. Gualtier stayed in Jackson's waiting room every time Gladys met with Jackson regarding her will. Gladys eventually signed the will, which named Jackson as the attorney for her estate, on April 28, 1987.

B. *Delia Grovert.* Delia Grovert had never married. She had no children or close relatives and was approximately 92 years old at the time of these events.

Delia had previously signed a voluntary petition for a conservatorship naming Shirley Schwartz, apparently a long-time tenant on one of Delia's farms, as conservator. On April 10, 1987, Gualtier called Jackson regarding problems with Delia's conservatorship. It appears Delia had known Gualtier for approximately 17 years; Gualtier had often worked on Delia's farms. Gualtier and Jackson spoke again on April 21 concerning Delia's situation. Jackson then prepared an application for appointment of guardian, an oath, and a designation of attorney. The names of the proposed guardians were left blank.

On Friday, April 24, 1987, Jackson traveled to Delia's home in Vinton, Iowa, to meet with her regarding the guardianship and the conservatorship. Also present when he arrived were Gualtier, JoAnn and Dennis Karr, Raymond Karr, Mr. and Mrs. Harwood, and Don Kanke. All of these people except the Harwoods were primary beneficiaries under a will Jackson later prepared for Delia. Jackson talked to Delia and the group for approximately one-half hour about the conservatorship and the guardianship. Delia named Gualtier and JoAnn Karr as guardians. Delia then requested to speak with Jackson about drafting a new will. Jackson told Delia he would have to discuss the will privately with her, and everyone else left the house.

Delia discussed her estate and her wishes for her new will with Jackson for approximately one-half hour. Jackson then went to the Benton County courthouse and reviewed the conservatorship proceedings. He found that no inventory of assets had been filed. Jackson then directed his legal assistant, Deb Boyd, to obtain legal descriptions of Delia's real estate.

On Monday, April 27, Jackson returned to Delia's home in Vinton with her new will. The same prospective beneficiaries were present, except the Harwoods. Delia read the will, and corrected a misspelled name and one real estate description before signing it. Under this will, Gualtier received an acreage, 80 acres of farmland, and one quarter of the residue of her estate. Gualtier and JoAnn Karr were nominated as co-executors, and Jackson was requested to be Delia's desired attorney for the estate. Delia then signed the petition for guardianship. Jackson thereafter filed with the district court the petition for guardianship, guardians' oath, and Jackson's designation as the attorney.

Delia died on January 16, 1988, leaving total probate assets valued at $826,456.50. Gualtier was not related to Delia by blood or marriage. Jackson knew that Delia had made three wills, one in each of the previous three months. Although her April 1987 will was not the first one in which she left property to Gualtier, this will benefitted Gualtier more than under the prior wills. After her death, a will contest action challenged her April 1987 will.

C. *John and Marion Gualtier.* While Jackson was representing Gladys and Delia, he also drafted wills for John and Marion Gualtier. The Gualtiers first met with Jackson regarding their wills on February 9, 1987. They signed the wills on April 15, 1987. Their wills also requested Jackson to be the attorney for their estates.

D. *The present case.* A complaint was filed by the Committee on Professional Ethics and Conduct with the Grievance Commission concerning respondent Jackson's actions involving the above matters.

After an evidentiary hearing, the commission concluded that Jackson had com-

mitted several ethical violations involving: 1) the premature payment of his attorney fees and the co-executor fee in the Paul Kortson estate; 2) the placing of the request in the Delia Grovert will that Jackson be employed as attorney for her estate; and 3) preparation of the wills for Gladys Kortson and Delia Grovert, which made substantial bequests to another client, John Gualtier, without adequate disclosure to Kortson and Grovert of Jackson's possible conflict of interests.

 Our review is de novo. *See* Iowa Sup.Ct.R. 118.10. The committee has the burden of proving by a convincing preponderance of the evidence that Jackson has violated the Code of Professional Responsibility as charged. *Committee on Professional Ethics and Conduct v. Zimmerman*, 465 N.W.2d 288, 290 (Iowa 1991). Violations of both disciplinary rules and ethical considerations are grounds for disciplinary sanctions. *See Committee on Professional Ethics & Conduct v. Conzett*, 476 N.W.2d 43, 44 (Iowa 1991).

We now consider the issues presented.

II. *Early probate fee payment.* Iowa Code sections 633.197 and 633.198 (1991) allow compensation for personal representatives and attorneys. Under these sections, attorneys and representatives are prohibited from receiving probate administration fees until after the court has fixed the amount. *See* Iowa Code §§ 633.197, 633.198; *see also Committee on Professional Ethics & Conduct v. Winkel*, 415 N.W.2d 601, 603 (Iowa 1987); *Committee on Professional Ethics & Conduct v. Coddington*, 360 N.W.2d 823, 825 (Iowa 1985). Under supreme court rule of probate procedure 2(d), the attorney and the representative must make a specific fee application. Rule 2(d) also sets out a timeline for paying the fees. Under the rule, one-half of the fees may be paid when the federal estate tax return, if required, and the Iowa inheritance tax return, if required, are prepared. The remainder of the fees may be paid when the final report is prepared and the court costs have been paid.

 In this case, Jackson filed the applications for attorney's fees on January 27,

1987, and for executor's fees on August 7. The court order fixing attorney's fees was not filed until March 25, and Gualtier's fees were not authorized until April 15, 1988. However, on January 16, 1987, Jackson asked Gladys Kortson to write checks for Jackson's entire fee and for one-half of Gualtier's fee, which she did. Jackson deposited his fees into his firm trust account and mailed Gualtier's check on January 28. Jackson withdrew one-half of his own fees on January 30. Jackson and Gualtier thus received fees before the district court approved them.

The district court later ratified the above fee amounts for Jackson and Gualtier. However, later ratification of the fees by the probate court does not remove the impropriety of earlier payments. *Committee on Professional Ethics & Conduct v. Elson*, 430 N.W.2d 113, 115 (Iowa 1988); *Coddington*, 360 N.W.2d at 824–25; *Attorney Grievance Commission of Maryland v. Owrutsky*, 322 Md. 334, 587 A.2d 511, 515–16 (1991). Therefore, Jackson improperly received fees before the district court authorized them.

Jackson additionally failed to comply with the other half of probate rule 2(d). The rule further provides that the second half of the fee may not be paid until the final report is prepared and the costs have been paid. The final report was not filed with the court until August 7, 1987, yet Jackson requested Gladys to write a check for the *full* amount of his fees on January 16, 1987, almost seven months before he was permitted under rule 2(d) to receive the second half of his fees. Therefore, Jackson also failed to comply with the timeline for collection of the remainder of his fees set out in rule 2(d).

Because Jackson requested his fee before the district court authorized it and before he had performed all the work required under rule 2(d), he violated DR 1–102(A)(1) (attorney shall not violate a disciplinary rule), DR 2–106(A) (attorney may not charge an illegal or clearly excessive fee), and EC 9–6 (attorney has a duty to uphold the integrity and honor of the profession).

III. *Nomination of attorney for an estate.* Jackson was requested to be the attorney for the estate in Delia Grovert's will under its terms because of his "complete familiarity with [her] estate and financial affairs" even though he had known Delia only four days when she signed the will.

An attorney may not influence a client to name the attorney as "executor, trustee, or lawyer in an instrument." *See* EC 5–6; *see also State v. Gulbankian*, 54 Wis.2d 605, 196 N.W.2d 733 (1972). If a client wishes the attorney to be so nominated, the attorney must take care to avoid even the appearance of impropriety. *See* EC 5–6.

Deb Boyd, Jackson's legal assistant, testified that including a nomination of attorney for the estate in a will was not Jackson's normal practice; thus, Delia must have requested the nomination on her own without influence from Jackson. Additionally, although Jackson had known Delia for only four days, he had spoken with Delia about her assets, obtained legal descriptions of her property, and made further inquiries warranting his "complete familiarity" with her estate.

Therefore, we conclude on the whole record that the committee has failed to prove that Jackson improperly influenced Delia to nominate him as attorney for her estate.

■ IV. *Preparing wills for one client which made substantial bequests to another client.* EC 5–1 states that a lawyer shall not allow the lawyer's professional judgment on behalf of a client to be compromised by other interests, including those of other clients or third persons. From November 5, 1986, to April 28, 1987, Jackson represented Gladys Kortson, Delia Grovert, and John Gualtier in various ways. Jackson represented Gladys as a co-executor of her deceased husband's estate and in preparing a will for her. Jackson represented Delia in preparing a will and a voluntary petition for appointment of a guardian, naming John Gualtier and JoAnn Karr as guardians. Jackson represented Gualtier as a co-executor of the Paul Kortson estate, as a co-guardian for Delia, and in preparing wills for John and Marion Gualtier.

Each of these representations involved "differing interests." Differing interests "include every interest that will adversely affect either the judgment or loyalty of a lawyer to a client, whether it be a conflicting, inconsistent, diverse, or other interest." *Committee on Professional Ethics & Conduct v. Mershon*, 316 N.W.2d 895, 898 (Iowa 1982); *see also* EC 5–14. Such a conflict requiring an attorney to disqualify himself occurs when there is a "substantial, relevant relationship or overlap between the subject matters of the two representations." *Carlson v. Fredrikson & Byron, P.A.*, 475 N.W.2d 882, 889 (Minn.Ct. App.1991). An attorney may not represent clients with differing interests if the attorney's professional judgment on behalf of the clients will be adversely affected. *See* DR 5–105(B) and (C). Here, there is a relevant relationship and overlap between the representations of Gladys, Delia, and Gualtier. We note that the grievance commission did not find that Jackson's professional judgment on behalf of the clients would be adversely affected.

An attorney can continue such representations only if the attorney makes full disclosure of the conflict to his client and the client consents to continued representation. *See* DR 5–105(D). Full disclosure involves

> seeing to it that his client either has independent advice in the matter or else receives from the attorney such advice as the latter would have been expected to give had the transaction been one between his client and a stranger.

*Mershon*, 316 N.W.2d at 899. The attorney must explain to his client the possible effects of such multiple representations on his professional judgment on behalf of the client. *See* DR 5–105(D).

Under this record, it appears that Gladys at all times wanted to leave substantial property to Gualtier and was not unduly influenced by him.

As for Delia's relationship with Gualtier, Jackson testified that he considered whether Delia was a victim of undue influence and concluded she was not. Under this

record, however, we are convinced that Jackson's determination was colored by his representation of Gualtier. Jackson at no time disclosed to Delia that he represented Gualtier in other matters.

As found by the Grievance Commission, those differing interests of Delia and Gualtier were:

John Gualtier was interested in preserving the potential inheritance[ ] from ... Delia.... Delia [was] interested in having a will drafted on [her] behalf free from undue influence.... Delia Grovert was further interested in seeing that her interests, as a ward, were properly protected. John Gualtier was interested in acting as her guardian.

Jackson should have taken steps at least as to Delia to ensure that she was aware of the differing and overlapping interests of Gualtier.

As a result, Jackson violated DR 1–102(A)(1) (lawyer shall not violate a disciplinary rule), EC 5–1 (the professional judgment of a lawyer should be exercised solely for client's benefit, free of compromising influences and loyalties), EC 5–14 (lawyer is precluded from accepting or continuing employment that will adversely affect his judgment on behalf of or dilute his loyalty to a client), DR 5–105(B) (lawyer shall decline proffered employment if his independent professional judgment on behalf of a client will be adversely affected by acceptance of proffered employment), DR 5–105(C) (lawyer shall not continue multiple employment if professional judgment will be adversely affected by representation of another client), and DR 5–105(D) (lawyer may represent multiple clients if each consents after full disclosure).

■ V. *Disposition.* We agree with the commission that the committee has established by a convincing preponderance of the evidence that Jackson has violated the several stated disciplinary rules and statutes in these transactions. The record also shows no past improprieties in his practice of law. The grievance commission recommended a reprimand as Jackson's sanction. We may impose a greater or lesser sanction on respondent than recommended by the grievance commission. *See* Iowa Sup. Ct.R. 118.10.

Based upon the foregoing authorities and the record in this case, we conclude that a reprimand is the appropriate sanction for Jackson's violations of the Code of Professional Responsibility, Iowa Code sections 633.197 and 633.198, and probate rule 2(d).

Accordingly, we reprimand respondent Stephen B. Jackson. *See* Iowa Sup.Ct.R. 118.10. Costs should be taxed to Jackson pursuant to Iowa supreme court rule 118.-22.

RESPONDENT REPRIMANDED.