Gertrude **RUDEN** and Rosella Jasper, Appellants,

v.

Tom **JENK** d/b/a Tom Jenk, Attorney at Law, Appellee.

No. 94–1708.

Supreme Court of Iowa.

Feb. 14, 1996.

Michael E. Sheehy of Shea Law Offices, Cedar Rapids, for appellants.

James R. Hellman and Carolyn A. Rafferty of Dutton, Braun, Staack, Hellman & Iversen, P.L.C., Waterloo, for appellee.

Considered by McGIVERIN, C.J., and HARRIS, LAVORATO, NEUMAN, and ANDREASEN, JJ.

ANDREASEN, Justice.

Gertrude Ruden and Rosella Jasper filed a legal malpractice action against Tom Jenk asserting that he had breached the standard of care as their attorney regarding their property rights and potential remedies in securing those rights while handling the estate of their deceased brother. The district court granted summary judgment in favor of Jenk holding that the plaintiffs failed to establish a prima facie case of legal malpractice. We affirm.

## I. Standard of Review.

A party moving for summary judgment has the burden of establishing the absence of any genuine issue of material fact and that it is entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c). In ruling upon the motion for summary judgment the court considers the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Id.* We review the record in the light most favorable to the party against whom the summary judgment was granted. *Johnson v. Farm Bureau Mut. Ins. Co.*, 533 N.W.2d 203, 205–06 (1995).

Because the issue of whether a duty arises out of a party's relationship is a legal question, it is susceptible to summary judgment. *Engstrom v. State,* 461 N.W.2d 309, 315 (Iowa 1990). Although questions of negligence and proximate cause are ordinarily for the jury to decide, they may be decided as matters of law in exceptional cases. Iowa R.App.P. 14(f)(10); *see Vande Kop v. McGill,* 528 N.W.2d 609, 613 (Iowa 1995); *Schmitz v. Crotty,* 528 N.W.2d 112, 117 (Iowa 1995); *Blackhawk Bldg. Sys. v. Law Firm,* 428 N.W.2d 288, 291 (Iowa 1988).

Here Jenk's motion for summary judgment annexed a separate statement of material facts with specific reference to those parts of the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits which support the contentions and a memorandum of authorities. *See* Iowa R.Civ.P. 237(h). The plaintiffs filed a response to Jenk's statement of material facts, a resistance to the motion for summary judgment, and a brief in support of the resistance. The following background facts and proceedings are derived from this record.

## II. Background Facts and Proceedings.

The allegations of malpractice center around Tom Jenk's handling of the estate of Frank Ruden who died intestate in August 1990. Gertrude Ruden and Rosella Jasper, who are two of six heirs, were appointed as the administrators of Frank's estate. They

designated Jenk as the attorney for the estate.

Prior to his death, Frank Ruden purchased property used as a tavern. In 1979, he entered into a real estate contract with Thomas and Karen Jaeger for the sale of the tavern property. Attorney Max Jenk, the father of Tom Jenk, prepared the contract. This real estate contract provided for installment payment of the purchase price of $80,000 with the final payment due December 1, 1989.

In 1980, Frank executed an assignment in which he transferred his interest in the Jaeger contract to Gertrude and Rosella upon his death. The instrument of assignment was a printed assignment of mortgage form. The instrument was modified to reflect that it was an assignment of a recorded real estate contract and was signed by Frank Ruden and notarized by Max Jenk. The instrument was also modified by adding "In case of my death" prior to the form language of "For value received *I* hereby sell, assign and transfer to *Gertrude Ruden and Rosella Jasper* of *Dubuque, Iowa* all *my* right, title and interest in and to a certain contract...."

Frank Ruden received all payments on the contract during his lifetime and apparently told no one of the assignment. It was never delivered to Gertrude or Rosella who were unaware of the assignment prior to the death of their brother. The real estate contract was modified by an extension agreement between Frank and the Jaegers on December 7, 1989. Attorney Tom Jenk prepared this extension agreement for Ruden. At the time of Ruden's death the unpaid balance on the real estate contract was approximately $24,-000.

Following Ruden's death, Tom Jenk and the administrators inventoried the safety deposit box of the decedent. Included in the items found in the safety deposit box was the abstract to the tavern property. Later, when Jenk found the assignment inside the abstract, he recorded it. He then notified Gertrude and Rosella of the existence of the assignment by letter dated October 1, 1990 which stated, "Enclosed you will find a copy of the Assignment of Contract which has been recorded and which, by separate phraseology in the Last Will and Testament, gives to you all of the interest in the contract to the Jaegers." Jenk acknowledges this statement was an error; he intended to state that the assignment had phraseology which made it the same as a Last Will and Testament. Jenk also furnished a copy of the assignment to the Jaegers and instructed them to make their monthly payments on the real estate contract to Gertrude and Rosella.

On October 17 attorney Paul Kaufman, representing two other heirs of the Ruden estate, notified Jenk that his clients challenge the validity of the assignment. The letter stated that the assignment "is invalid in that it attempts a testamentary transfer without meeting the requisite requirements of a will. It also refers to a contract which expired prior to Frank Ruden's death." Kaufman requested that payments under the contract be considered an asset of the estate to be distributed to all heirs.

Jenk notified Gertrude and Rosella by letter dated October 30 that:

I talked to Paul J. Kaufman, who indicated that Katherine Krug and Sharon Boots have stopped at his office and want you to withdraw as Administrators of the Frank Ruden Estate. Attorney Kaufman indicated that Katherine Krug and Sharon Boots do not trust you and that they feel that you are not listing all of the assets in this particular estate.

I am lost as to why they would even think this due to the fact that we have not even filed an Inventory and I have informed Attorney Kaufman that we will send him a copy of the Inventory before we file it with the Court, and a copy of the expenses also and a copy of Frank's income tax return, which will show where he had any and all of his assets. Hopefully, this will not be necessary and we will not have to argue and fight this particular matter.

I would also like to denote to you that if you are desirous of the undersigned taking a case on and filing briefs relative to whether or not Attorney Kaufman is correct in his analysis as to whether or not the assignment of interest in the contract, which was eventually extended, is to transfer, then I would like you to let me know.

I feel that the problem that we have right here which was expressed by Attorney Kaufman for and on behalf of his two heirs in this estate denote that the assignment was for the contract not for the contract after it was extended. It is kind of a legal question and it would be a case law question. I know Attorney Kaufman hasn't researched the same and do know it would cost between $400 and $500 to research same for it will take a lot of time to find case law and read cases and if you are desirous of the undersigned doing this, it will be necessary that you give your authority to do so and that you agree to said payment on a timely basis. This office and the undersigned charge $85.00 an hour for time and this would be extraordinary fees in this particular estate and will have nothing to do with the ordinary fees of ordinary administration in an estate such as this.

Without the requested authority of the administrators, Jenk researched the validity of the assignment. He also secured a legal brief from Drake University Law School. Based upon his research and the legal brief he received, Jenk concluded the assignment was invalid. He then instructed the Jaegers to make their contract payments to the Ruden estate and advised Gertrude and Rosella to deposit the two monthly payments they had received, totalling $1200, into the estate checking account. They followed his instructions.

At about this time Gertrude and Rosella retained attorney Joseph J. Bitter to represent their personal interests in estate matters including the dispute over the assignment. On November 3 Kaufman wrote a letter to Bitter regarding the Ruden estate. The letter recognized Bitter's representation of Gertrude and Rosella and referred to a prior discussion about the assignment of the Ruden contract and Bitter's suggestion that they attempt to settle the matter.

In January 1991, Kaufman wrote to both Jenk and Bitter offering to settle each of his client's claims for $4161. Jenk wrote Gertrude and Rosella relaying the settlement offer and suggesting they discuss the offer. The letter is not addressed to Bitter, nor is a copy indicated to him. Jenk also wrote to Rosella on January 19 concerning a potential conflict of interest as a result of a claim filed against the estate by Rosella's daughter for personal services and care of Frank prior to his death:

> Sometime ago you indicated to me that you and possibly your daughter would be filing a claim against Frank's estate for past care and support. As I indicated to you, I have a conflict of interest if there is to be any claim in Frank's estate due to the fact that I am the attorney for and on behalf of the estate so you will have to hire your own attorney regarding same. If the claim is filed, we will have to ask the Court to set the matter down for hearing and rule accordingly.

After Kaufman failed to receive a counteroffer to his settlement proposal, he notified Jenk and Bitter that he assumed Gertrude and Rosella were not interested in the settlement.

In February Kaufman, on behalf of his clients, filed a petition to remove Gertrude and Rosella as administrators of the estate based on the conflict of interest arising out of their claims under the assignment and the personal claim of Rosella's daughter. Jenk wrote a letter, dated February 13, to Gertrude and Rosella suggesting that they make a settlement offer of $2500 to Kaufman's clients. Gertrude and Rosella refused to authorize the settlement offer.

On February 27 Jenk advised the administrators to hire another attorney to represent the estate. He filed a motion to withdraw as attorney for the estate on March 1, which was granted by the district court on March 15. In April, Jenk again advised Gertrude and Rosella to obtain another attorney to represent the estate.

On April 23, the court removed Gertrude and Rosella as administrators of the estate. The probate court entered a ruling in July concluding that the assignment was ineffective and, although intended to be a testamentary document, did not qualify as a will pursuant to Iowa law. A final distribution of the estate was made in October 1992 and each heir, including Gertrude and Rosella, received a one-sixth share of the estate which included the Jaeger contract payments.

On November 12, Gertrude and Rosella filed a legal malpractice action against Tom Jenk. They asserted that Jenk was negligent because he incorrectly advised them that the assignment validly granted to them the Jaeger contract and because he failed to advise them of a potential cause of action against the preparer of the assignment prior to the running of the statute of limitations.

It is presumed that Max Jenk, who died on September 11, 1984, prepared the assignment. The final report for Max Jenk's estate was filed in July, 1986, and the five-year statute of limitations in which to reopen the estate ran as of July 29, 1991. *See* Iowa Code § 633.488 (1985). Tom Jenk was an heir and attorney for the Max Jenk estate.

In July 1994, Jenk filed a motion for summary judgment. After hearing and argument, the district court entered an order sustaining Jenk's motion for summary judgment. The court first concluded that any negligence by Max Jenk in preparing the assignment cannot be imputed to Tom Jenk because they did not practice in partnership, but each operated as a sole practitioner. The court concluded that Tom's conduct, after he discovered the assignment, cannot be causally related to any damages suffered by Gertrude and Rosella. Furthermore, the court found Jenk's legal duty was as attorney for Frank's estate. He did not have a duty to advise the plaintiffs of any possible claims against Max Jenk's estate.

### III. *Claim of Legal Malpractice.*

■ To establish a prima facie claim of legal malpractice, the plaintiffs must produce substantial evidence that shows: (1) the existence of an attorney-client relationship giving rise to a duty, (2) the attorney, either by an act or failure to act, violated or breached that duty, (3) the attorney's breach of duty proximately caused injury to the client, and (4) the client sustained actual injury, loss, or damage. *Vande Kop,* 528 N.W.2d at 611 (citation omitted). The failure to prove any one of these four elements defeats recovery for the plaintiffs.

### A. Attorney–Client Relationship.

■ An attorney is generally liable for malpractice only to a client. *Schreiner v. Scoville,* 410 N.W.2d 679, 681 (Iowa 1987). We recognize a trend, however, to allow some relaxation of the privity requirement under severely limited circumstances. *Id.* Courts have been willing to recognize a claim by an heir or testamentary beneficiary when the testamentary instrument is rendered invalid as a direct result of attorney error. *Id.* at 682. A third-party legal malpractice claimant "must be a direct and intended beneficiary of the lawyer's services." *Brody v. Ruby,* 267 N.W.2d 902, 906 (Iowa 1978). Obviously, this exception does not apply in this suit against Tom Jenk because he did not prepare the assignment.

■ An attorney designated for an estate is charged with the duty of commencing probate proceedings in a timely manner and overseeing administration of the estate. *Committee on Professional Ethics & Conduct v. Elson,* 430 N.W.2d 113, 114 (Iowa 1988). Although the estate attorney is hired by an executor or administrator, his obligations, like those of the fiduciary, extend to the estate and all other distributees. *See Schmitz,* 528 N.W.2d at 115–17 (attorney breached duty owed to beneficiaries to exercise reasonable skill and care in handling an estate).

Gertrude and Rosella contend Jenk had a duty to correctly advise them concerning the nature and extent of their property rights in the Ruden real estate contract. They also claim he had a duty to advise them as to their potential malpractice claim against Max Jenk's estate and the applicable statute of limitations. Additionally they urge Jenk had a duty to advise them as to a potential conflict of interest arising from Jenk's interest in his father's estate. Because Jenk breached these duties, they maintain Frank's intent to convey his interest in the real estate contract to them was frustrated and their claim against Max Jenk was lost.

■ We agree Tom Jenk had a duty to advise the administrators as to the legal validity of the assignment. It is his duty as attorney to use "such skill, prudence and

diligence as lawyers of ordinary skill and capacity commonly possess and exercise" in performing the task he undertakes. *Millwright v. Romer*, 322 N.W.2d 30, 32 (Iowa 1982).

■ Although the Iowa Code of Professional Responsibility for Lawyers does not undertake to define standards of civil liability, it constitutes some evidence of negligence. *See Menzel v. Morse*, 362 N.W.2d 465, 471 (Iowa 1985) ("Standards of conduct and practice may be evidenced by ... the Code of Professional Responsibility for Lawyers.") (citation omitted). To handle a legal matter without preparation adequate in the circumstances is a violation of the disciplinary rules. *See* DR 6–101(A); *Committee on Professional Ethics & Conduct v. Nadler*, 467 N.W.2d 250, 253 (Iowa 1991). A lawyer must exercise independent professional judgment on behalf of a client. A lawyer should not accept employment if the exercise of professional judgment may be affected by the lawyer's own financial or personal interests. *See* DR 5–101(A); *Committee on Professional Ethics & Conduct v. Hall*, 463 N.W.2d 30, 34 (Iowa 1990). A lawyer must decline employment if the exercise of independent professional judgment on behalf of the client is likely to be adversely affected by the acceptance of employment except with the consent of the client. *See* DR 5–105(B); *Committee on Professional Ethics & Conduct v. Jackson*, 492 N.W.2d 430, 434 (Iowa 1992). Likewise, a lawyer must withdraw as counsel if the exercise of independent professional judgment on behalf of a client is likely to be adversely affected by the representation of another client unless each consents after full disclosure. *See* DR 5–105(C); *Id.* at 435; *Committee on Professional Ethics & Conduct v. Oehler*, 350 N.W.2d 195, 199 (Iowa 1984).

■ Clearly there is a factual issue as to the existence of an attorney-client relationship between Jenk and the plaintiffs personally. Likewise, there is a factual issue as to whether the duties arising from the relationship were violated or breached. Both parties identified experts in support of their position on the existence of the attorney-client relationship and the breach of the

duties arising from the relationship. Jenk would not be entitled to summary judgment upon these elements of the malpractice claim. We next review the undisputed facts as to proximate cause of the breach and the actual injury, loss, or damage sustained to determine if Jenk is entitled to judgment as a matter of law.

B. Proximate Cause of Actual Injury, Loss, or Damage.

■ In answer to an interrogatory, Gertrude and Rosella described the damage caused by Jenk's negligence as the loss of the seller's interest in the land contract on the tavern, valued in the estate as $24,015.36. To recover damages, they "must show that, but for the attorney's negligence, the loss would not have occurred." *Blackhawk*, 428 N.W.2d at 290. Was the breach of a duty to correctly advise them concerning the validity of the assignment and their property right in the real estate contract a proximate cause of their loss? We think not. As expressed by the district court, "Jenk may have given temporary false hope, but that does not constitute prima facie showing of a duty breached causing their injury." The probate court properly held that the assignment was never valid. If Jenk had immediately correctly advised them of the invalidity of the assignment, their property interest in the real estate contract would not have changed. The alleged breach was not a proximate cause of damage to them.

■ Was the breach of a duty to advise them as to their potential malpractice claim against Max Jenk's estate and the applicable statute of limitations a proximate cause of their loss? We think not. It is an undisputed fact that Gertrude and Rosella employed Bitter to represent their individual interests in the Ruden estate in October 1990. He agreed to represent them although it was his opinion that the assignment was a nullity. He informed them that any lawyer should have known the assignment was void. He indicated to his clients that he did not want to handle a malpractice case against another lawyer. He mentioned it was malpractice to draft the assignment and not deliver it but that he was not interested in pursuing it.

Jenk told the administrators he was not going to continue as attorney for the estate in February 1991. The court approved his withdrawal in March.

A petition to reopen the Max Jenk estate to permit a malpractice claim to be filed could have been filed until July 29, 1991. Jenk's alleged negligence in failing to advise his clients of the potential claim in the Max Jenk's estate is not a proximate cause of damage if a successor attorney is employed and he advises them of the potential malpractice claim at a time when such a claim is not barred by the statutory limitation on reopening of the estate. *See Steketee v. Lintz, Williams & Rothberg,* 38 Cal.3d 46, 210 Cal. Rptr. 781, 787, 694 P.2d 1153, 1159 (1985) ("An attorney cannot be held liable for failing to file an action prior to the expiration of the statute of limitations if he ceased to represent the client and was replaced by other counsel before the statute ran on the client's action.").

■■ Likewise, was the failure to promptly withdraw as counsel a proximate cause of the loss? We think not. Under the undisputed facts of this case, Gertrude and Rosella had sufficient time to engage a new attorney to reopen the estate for the purpose of filing a malpractice claim.

IV. *Disposition.*

After reviewing the evidence in a light most favorable to the plaintiffs, we hold that the material facts in this case failed to show that Jenk's acts or omissions were a proximate cause of any alleged damages. Because the undisputed facts establish the nonexistence of an essential element of the malpractice claim, Jenk is entitled to summary judgment in his favor. Accordingly, the order of the district court granting summary judgment to Jenk is affirmed.

**AFFIRMED.**